2005 WY 62

**Ollie Jenning CRABTREE,
Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee
(Defendant).**

No. 04–13.

Supreme Court of Wyoming.

June 3, 2005.

Representing Appellant: Kenneth M. Koski, State Public Defender; Donna D. Domonkos, Appellate Counsel.

Representing Appellee: Patrick J. Crank, Wyoming Attorney General; Paul S. Rehurek, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Georgia L. Tibbetts, Senior Assistant Attorney General.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

GOLDEN, Justice.

[¶ 1]   Ollie Jenning Crabtree was convicted of battery against a household member, a third offense felony under Wyo. Stat. Ann. § 6–2–501(b) and (f)(ii) (LexisNexis 2003). Crabtree appeals the judgment and sentence related to that conviction. He claims the district court failed to properly instruct the jury and that the district court abused its discretion when it banished ("sundowned") him from Natrona County. We affirm the conviction and reverse the sentence for the district court to strike the banishment term.

## ISSUES

[¶ 2]   Crabtree advances two issues on appeal:

1) Whether the district court failed to properly instruct the jury.

2) Whether the trial court abused its sentencing discretion when it effectively "sundowned" Mr. Crabtree from Natrona County.

The State rephrases the issues as:

1) Is Appellant entitled to reversal of his conviction because of the district court's response to a question posed by the jury during deliberations?

2) Did the district court abuse its discretion in sentencing Appellant?

## FACTS

[¶ 3]   Crabtree and the victim had an on and off relationship for approximately four years. The relationship was often contentious, and at times Crabtree physically injured the victim. In fact, the incident that led to the instant charges occurred when Crabtree was awaiting sentencing on a prior battery committed against the victim. At that time, Crabtree was prohibited by court order from having contact with the victim. Nevertheless, Crabtree failed to comply with this no contact order and resumed a relationship with the victim.

[¶ 4]   Once again the couple's relationship was filled with contention. On March 26, 2003, Crabtree spent most of the day at the victim's apartment where the couple argued. In part, Crabtree was displeased about his legal problems and was angry with the victim at the possibility of serving time in jail for the prior instance of battery. After arguing for some time, the victim asked Crabtree to leave her apartment, and Crabtree did so.

[¶ 5]   The next day Crabtree returned to the victim's apartment, where the two resumed their argument. At some point, Crabtree followed the victim downstairs to her bedroom, pushed her down on the bed, and bit the victim on the side of her neck. When the victim began crying and asked him to stop, Crabtree did so. However, he then pounded and rubbed his knuckles on her chest giving her a "red chest." Following the "red chest," Crabtree bit the other side of the victim's neck until she once again cried and asked him to stop.

[¶ 6]   At that point, Crabtree returned upstairs. The victim followed Crabtree hoping to escape out the door. When Crabtree opened the door, the victim tried to sneak

out. She was unable to do so because Crabtree pushed her against the wall in the entryway and then tried to drag her back downstairs. The victim grabbed the railing to prevent this from happening and began to scream for help.

[¶ 7] The victim's neighbor heard the screams and came to the victim's door. As the neighbor neared the door, Crabtree opened it and left. The neighbor convinced the victim to call the police, and they came to investigate. On March 28, 2003, a criminal information was filed charging Crabtree with one count of battery against a household member. A jury trial commenced on July 14, 2003. During the course of its deliberations the jury sent a note to the district court asking if it could (1) have a copy of the police report; and (2) consider Crabtree's presence in the victim's apartment as unlawful for the purposes of Jury Instruction No. 7. After conferring with counsel, the district court informed the jury that it had to rely on the testimony, exhibits, and instructions presented at trial. A short time later the jury returned a verdict finding Crabtree guilty.

[¶ 8] After reviewing a presentence investigation report, the district court sentenced Crabtree to a term of imprisonment of eighteen to twenty-four months and ordered that the sentence be served consecutively to the sentence previously imposed for the earlier battery conviction. In addition, the court requested that the sentencing order reflect the court's recommendation that Crabtree not be allowed to return to Natrona County. This recommendation was incorporated into the order. Crabtree now appeals.

## STANDARD OF REVIEW

[¶ 9] The trial court has the duty to instruct the jury on the general principles applicable in the case and is given wide latitude to do so. Reversible error will not be found as long as the instructions when viewed as a whole and in the context of the entire trial fairly and adequately cover the issues. *Glenn v. State*, 2003 WY 4, ¶ 18, 61 P.3d 389, ¶ 18 (Wyo.2003); *see also Mueller v. State*, 2001 WY 134, ¶ 9, 36 P.3d 1151, ¶ 9 (Wyo.2001). Additionally, we review the trial court's sentencing decisions for an abuse of

discretion. *Manes v. State*, 2004 WY 70, ¶ 9, 92 P.3d 289, ¶ 9 (Wyo.2004). A trial court abuses its discretion when it acts beyond the scope of its authority and imposes a sentence that is illegal. *Strickland v. State*, 2004 WY 91, ¶¶ 37–38, 94 P.3d 1034, ¶¶ 37–38 (Wyo. 2004). "An illegal sentence is one that exceeds statutory limits, imposes multiple terms of punishment for the same offense, or otherwise violates constitutions or the law." *Id.* at ¶ 36.

## DISCUSSION

[¶ 10] Crabtree argues that the district court erred when it failed to further instruct the jury in light of the jury's question regarding the term "unlawfully" as used in Instruction No. 7. Instruction No. 7 reads:

The elements of the crime of Battery, as charged in this case, are:

1. On or about the 27th day of March, 2003;

2. In the County of Natrona, and State of Wyoming

3. The Defendant, Ollie Jenning Crabtree;

4. Unlawfully touch [sic] another, [victim]

5. A household member

6. In a rude, insolent or angry manner.
OR

4. Intentionally, knowingly, or recklessly;

5. Cause [sic] bodily injury to another, [victim]

6. A household member.

If you find from your consideration of all the evidence that each of these elements has been proved beyond a reasonable doubt, then you should find the Defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these elements has not been proved beyond a reasonable doubt, then you should find the Defendant not guilty.

After reviewing the jury's question and discussing it with counsel, the district court ultimately decided to refer the jury back to

the evidence and the instructions previously provided. The district court called the jury back into open court and stated:

> [I]t is not possible for the Court to further instruct the jury. It is not possible for the Court to respond to the question. The only thing I can do is to refer you back to the evidence that was received and to the evidence and to the instructions that you have copies of. And you'll need to utilize that evidence and those instructions to answer your questions in rendering a verdict.

Certainly, it is possible for a district court to further instruct the jury when appropriate. However, we find no error in the district court's decision not to in this instance.

■ [¶ 11] Jury instructions should inform the jury concerning the applicable law so that they can apply that law to their findings with respect to material facts. *Compton v. State*, 931 P.2d 936, 939–40 (Wyo. 1997). As a whole, the instructions should leave no doubt about under what circumstances the crime can be found to have been committed. *Id.* Failure to give an instruction on an essential element is error as is a confusing or misleading instruction. *Id.* While the jury's question in this instance does evidence some initial confusion about the term "unlawful," the plain language of Instruction No. 7 clearly indicates that unlawful modifies touching. The district court referred the jury back to this proper and unambiguous instruction. When rereading the instruction, as the district court instructed them to do, the jury undoubtedly noted the plain language of that instruction and realized that it was the touching that must be unlawful. We therefore cannot conclude the court erred in failing to further instruct the jury.

[¶ 12] Furthermore, even if the district court erred by failing to further instruct the jury, Instruction No. 7 presented alternate theories of the crime. The verdict form also provided:

> We the jury, duly empaneled and sworn to try the above-entitled cause, do find as follows:
>
> 1(A). As to the charge of Battery by unlawfully touching [victim] in a rude, insolent or angry manner, charged in the Information, we find the Defendant, Ollie Jenning Crabtree:
>
> ——— Guilty
> ——— Not Guilty
>
> Regardless of your answer to 1(A), you must proceed to answer 1(B).
>
> 1(B). As to the charge of Battery by intentionally, knowingly or recklessly causing bodily injury to [victim], charged in the Information, we find the Defendant, Ollie Jenning Crabtree:
>
> ——— Guilty
> ——— Not Guilty

The jury found Crabtree guilty on both alternatives.[1] The error that Crabtree asserts pertains only to the first alternate theory. Crabtree has not challenged the second alternative, and our review of the record indicates that there is sufficient evidence to support this alternative. Accordingly, we affirm Crabtree's conviction.

■ [¶ 13] Crabtree next claims that the district court abused its discretion when sentencing him. The district court in this instance made the following statement during the sentencing hearing, "And I would also ask that the order reflect that in the event that Mr. Crabtree is released early either on parole or by other means prior to his full service of sentence, that he not be allowed to return to Natrona County, Wyoming." The court's recommendation was included in the judgment and sentence in an "it is ordered" clause.

[¶ 14] We have recently had the opportunity to consider a similar banishment clause in *Strickland v. State*, 2004 WY 91, 94 P.3d 1034 (Wyo.2004). There we noted that it has been held that a defendant may be banished from certain small areas of the state, but such a condition must relate to the rehabilita-

1. As we noted in *May v. State*, 2003 WY 14, ¶ 28, 62 P.3d 574, ¶ 28 (Wyo.2003), the State is not prohibited from presenting alternate theories of the crime. However, if it is going to do so it must provide sufficient evidence of both or utilize a special interrogatory verdict form. In this instance, the State wisely did both.

tive purposes of the sentence. *Id.* at ¶ 37 (citing *Sanchez v. State*, 234 Ga.App. 809, 508 S.E.2d 185, 186–87 (1998); and *Commonwealth v. Thad T.*, 59 Mass.App.Ct. 497, 796 N.E.2d 869, 880 (2003)). Appellate courts have routinely invalidated conditions ordering a defendant to leave a broad geographical region. *State v. Charlton*, 115 N.M. 35, 846 P.2d 341, 344 (App.1992). We also noted that "banishment" may be deemed so unreasonable as to render the sentence void. In fact, there is case law to suggest that banishment has no rehabilitative role in modern penology and is instead contrary to public policy. *Strickland*, at ¶ 37 (citing *Charlton*, 846 P.2d at 343–44).

[¶ 15] The courts finding that banishment violates public policy often focus on the problems associated with banishing a defendant from an entire state. These courts reason that "[b]anishment would tend to incite dissension, provoke retaliation, and disturb that fundamental equality of political rights among the several states which is the basis of the Union itself. To permit one state to dump its convict criminals into another is not in the interests of safety and welfare; therefore, the punishment by banishment to another state is prohibited by public policy." *Charlton*, 846 P.2d at 344 (internal quotation marks and citation omitted). We find this reasoning equally applicable to banishment from entire counties. Surely banishment from an entire county will incite dissention and provoke retaliation among counties just as it would among states.

[¶ 16] Furthermore, the rehabilitative purposes of sentencing are best served if the conditions are specifically tailored to address the particular defendant and the particular crime, not simply an arbitrary geographic boundary like an entire county. *See Commonwealth v. Pike*, 428 Mass. 393, 701 N.E.2d 951, 959 (1998). Indeed, we too are hard pressed to see how a banishment of this sort has any role in modern penology. Accordingly, upon further reflection we find it necessary to go a step beyond *Strickland* and hold that absent extraordinary circumstances banishment of this sort is never appropriate. We therefore conclude that this portion of Crabtree's sentence is unlawful and remand to the district court with the direction that the offending portion of Crabtree's sentence be deleted.

## CONCLUSION

[¶ 17] For the reasons explained above we affirm Crabtree's conviction. The district court did not err in instructing the jury. However, we reverse the portion of Crabtree's sentence banishing him from Natrona County. We remand and direct the district court to strike that portion of Crabtree's sentence.