# IN THE SUPREME COURT, STATE OF WYOMING

## 2021 WY 39

### OCTOBER TERM, A.D. 2020

### March 8, 2021

TERRY EARL NEIDLINGER, SR.,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-19-0149, S-20-0125

*Appeal from the District Court of Campbell County*
*The Honorable Michael N. Deegan, Judge*

*Representing Appellant:*
   Devon Petersen of Fleener Petersen, LLC, Laramie, Wyoming

*Representing Appellee:*
   Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General; Timothy P. Zintak, Assistant Attorney General. Argument by Mr. Zintak.

*Before DAVIS, C.J., and FOX, KAUTZ, BOOMGAARDEN, and GRAY, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**DAVIS**, Chief Justice.

[¶1] Terry Neidlinger was charged with two counts of first-degree sexual assault, one count of aggravated assault and battery, and two counts of voyeurism. Following a three-day jury trial, he was convicted of one count of first-degree sexual assault and the two counts of voyeurism. He was acquitted of the other charges.

[¶2] On appeal, Mr. Neidlinger challenges the sufficiency of the evidence to support the conviction of first-degree sexual assault. He claims that there was insufficient evidence for a jury to find that he caused the victim to submit to sexual intrusion by threat, or that the victim reasonably believed that he had the present ability to execute the threat. He also maintains that the district court abused its discretion in the placement of certain special interrogatories on the verdict form. Finally, he appeals the denial of his motion for a new trial based on ineffective assistance of counsel. We affirm the conviction, but we remand for correction of a clerical error in the judgment and sentence.

## ISSUE

[¶3] Mr. Neidlinger raises three issues on appeal, which we restate as:

1. Was there sufficient evidence to support a conviction of sexual assault in the first degree?

2. Did the district court abuse its discretion in utilizing a special verdict form that required the jury to answer questions related to the charged offense before it was required to make a finding of guilt?

3. Did the district court err in denying Mr. Neidlinger's W.R.A.P. 21 motion for a new trial?

## FACTS

[¶4] This case arose from a relationship between Debra Heying and Terry Neidlinger. Ms. Heying considered Mr. Neidlinger's residence to be her second home, and she often stayed there. The events leading up to Mr. Neidlinger's arrest and convictions culminated on June 8, 2018, when Ms. Heying reported that he had sexually assaulted her.

[¶5] On that date, Ms. Heying reported to the emergency room ("ER") at Campbell County Health in Gillette. She complained of severe pain in her rectum, and she reported that a man she knew penetrated her there with his penis. Peter Chase, M.D., an ER physician, and Nancy Stolpe, a Sexual Assault Nurse Examiner ("SANE Nurse"), evaluated Ms. Heying.

1

[¶6] Dr. Chase later testified that he observed several injuries, including one to her rectal area that appeared to be the result of anal penetration. He also noted that the patient reported that she was "assaulted with strangulation, assaulted with penetrating object/penis."

[¶7] As a SANE Nurse, Nurse Stolpe was tasked with collecting evidence from Ms. Heying and treating her injuries. Nurse Stolpe noticed and documented a number of injuries, including tenderness in the right breast, a dark purple circular mark on the front of her left hip, and bruising on the right side of her face and on her lower left and right legs, an elbow abrasion, and bruises on her wrist and the back of her right ear. She also documented a tear on Ms. Heying's rectum that was approximately four centimeters in length. She later testified that she had never seen a rectal tear of that size before, and that it was consistent with the version of events Ms. Heying reported.

[¶8] During defense counsel's cross-examination of Nurse Stolpe at trial, she testified that Ms. Heying came into the ER at about 6:20 p.m. and stated that Mr. Neidlinger "told [her] to lay on [her] side, said if [she] opened [her] mouth he would stick something in it, knock [her] teeth out, and cut [her] tongue out." Nurse Stolpe further testified that Ms. Heying indicated that he "put [her] head between his legs and [choked her] out," and then anally assaulted her. Nurse Stolpe also testified that she took a DNA swab of the area around and inside Ms. Heying's rectum, which later revealed when tested by Kimberly Ley, a forensic DNA analyst with the Wyoming State Crime Lab, that the two contributors of the swabbed fluid were 3.57 septillion times more likely to be Debra Heying and Terry Neidlinger than Debra Heying and an unknown individual.

[¶9] Deputy Jeff Mooney with the Campbell County Sheriff's Office was dispatched to the emergency room due to the reported sexual assault. Upon arrival, Deputy Mooney spoke with Ms. Heying as she was being prepared for administration of a sexual assault kit. He testified at trial that Ms. Heying reported she had been anally assaulted by Terry Neidlinger, and also indicated that she was bleeding from her rectum. During cross-examination, he also testified it was hard for him to get Ms. Heying focused on the details of the assault, but that she essentially reported that when she woke up to get something to eat, Mr. Neidlinger threatened her and demanded that she get into his bed. He further indicated that Ms. Heying told him that Mr. Neidlinger threatened to knock her teeth out and cut her tongue out if she did not comply with his demands, and that when she complied with his request that she lay on her side, he assaulted her.

[¶10] On June 8 and 9, 2018, Campbell County Sheriff's Office Investigator Kristen Antle interviewed Ms. Heying to gather further information about the assault. Ms. Heying told Investigator Antle that Mr. Neidlinger threatened her with a knife that had a rainbow design on it.

2

[¶11]  On June 12, 2018, deputies with the Campbell County Sheriff's Office executed a search warrant at Mr. Neidlinger's residence and an arrest warrant.  When the deputies arrived, they found Mr. Neidlinger in bed.  Numerous knives were scattered around the bedroom.  A knife like the one Ms. Heying described to Investigator Antle was found on the side of the bed on which Mr. Neidlinger was sleeping, and "it was within about six feet . . . of where he was laying."

[¶12]  Also on June 12, 2018, the State charged Mr. Neidlinger in case CR 8403 with the felony offenses of First Degree Sexual Assault, in violation of Wyo. Stat. Ann. § 6-2-302(a)(i) (Count I); Aggravated Assault and Battery, in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii)(b) (Count II); First Degree Sexual Assault, in violation of Wyo. Stat. Ann. § 6-2-302(a)(i) (Count III); First Degree Sexual Assault, in violation of Wyo. Stat. Ann. § 6-2-302(a)(ii) (Count IV); and misdemeanor Battery, in violation of Wyo. Stat. Ann. § 6-2-501(b) (Count V).  The State later amended the Information on July 12, 2018, to drop one of the first-degree sexual assault counts, Count III, while the remaining counts (IV and V) were renumbered III and IV.

[¶13]  Investigator Antle interviewed Mr. Neidlinger on June 13, 2018.  She testified that during this interview, Mr. Neidlinger denied having anal intercourse with Ms. Heying, and that when he was asked about the possibility of his DNA being found on the DNA swab of her rectum, he stated "that she possibly could have DNA in her anus because of rolling around in the sheets."  Investigator Antle further testified that in a recorded telephone call that Mr. Neidlinger gave two additional explanations as to why his DNA could have been found in Ms. Heying:

> A.      One explanation was that he was sweating really badly in blankets, and when he had left to go to the hospital, upon his return she was then wrapped in those same blankets, and that's possibly how his DNA could be found in her anus.
>
> Another explanation was that during a sexual encounter with another woman, there may be some old residue that she maybe had scooped up and stuck up her anus herself.

[¶14]  Also during the interview, Mr. Neidlinger disclosed that he had "nude pictures" of Debra Heying on his cell phone, and claimed that the pictures and a video had been taken with her consent.  Ms. Heying indicated otherwise in subsequent interviews.  After further investigation into the contents of Mr. Neidlinger's cell phone, on July 26, 2018, the State charged him in case CR 8464 with two felony counts of voyeurism in violation of Wyo. Stat. Ann. § 6-4-304(b)(i) for capturing images or video without Ms. Heying's consent or knowledge.

[¶15]  On August 30, 2018, defense counsel moved to join cases CR 8403 and CR 8464 pursuant to Rule 13 of the Wyoming Rules of Criminal Procedure ("W.R.Cr.P.").  She argued that the facts and circumstances alleged were all part and parcel of the same case, and that both cases related to the relationship between the defendant and Ms. Heying.  The State did not object to joinder, and in fact conceded that "had the State been aware of the voyeurism or the alleged voyeurism, it all would have been done in the same Information." On September 5, 2018, the district court granted the motion and joined the cases for trial.

[¶16]  After a three-day trial, the jury found Mr. Neidlinger guilty of first-degree sexual assault for the June 8, 2018 anal intrusion, as charged in Count III of CR 8403, and guilty of the two counts of voyeurism based on the photos and video found on his phone, as charged in CR 8464.

[¶17]  On May 15, 2019, the district court sentenced Mr. Neidlinger to not less than twenty years nor more than thirty years imprisonment on Count III in case CR 8403, to run concurrent with both sentences in case CR 8464.  In CR 8464, the district court sentenced Mr. Neidlinger to not less than twenty months nor more than twenty-four months incarceration for both counts, to run concurrent with each other and the first-degree sexual assault conviction in case CR 8403.  Mr. Neidlinger timely appealed the judgment and sentence relating to the sexual assault.

[¶18]  On October 11, 2019, Mr. Neidlinger, through new counsel, timely filed a motion for a new trial pursuant to Rule 21 of the Wyoming Rules of Appellate Procedure ("W.R.A.P."), in which it was alleged that his trial counsel was ineffective in failing to file a motion to suppress the cell phone evidence, in filing a motion to join the two cases, and in not allowing him to testify.  After an evidentiary hearing, the district court issued a detailed order setting forth factual findings and its legal conclusion that trial counsel's performance was not deficient.

[¶19] Mr. Neidlinger timely appealed the district court's denial of his W.R.A.P. 21 motion, and that appeal was consolidated with his appeal of the underlying judgment and sentence.

## DISCUSSION

[¶20] We will first address Mr. Neidlinger's contention that there is not sufficient evidence in the record to support his conviction for first-degree sexual assault.  We will then turn to his claims of error surrounding the verdict form and his arguments that trial counsel was ineffective.  Finally, we will address a citation error in the judgment and sentence.

## I. Sufficiency of the Evidence for Sexual Assault in the First Degree

[¶21] Mr. Neidlinger was convicted of sexual assault in the first-degree under Wyo. Stat. Ann. § 6-2-302(a)(ii) (LexisNexis 2019), which provides:

> (a) Any actor who inflicts sexual intrusion on a victim commits a sexual assault in the first degree if:
>
> \* \* \*
>
> (ii) The actor causes submission of the victim by threat of death, serious bodily injury, extreme physical pain or kidnapping to be inflicted on anyone and the victim reasonably believes that the actor has the present ability to execute these threats[.]

He claims that there was not sufficient evidence to find that he caused the victim to submit to sexual intrusion by threatening her with serious bodily injury or extreme physical pain, or that she reasonably believed that he had the present ability to execute on his threat, both of which were elements of the charge.

[¶22] "When reviewing a claim that the evidence was insufficient to support a jury's verdict in a criminal trial, we decide whether the evidence could reasonably support the jury's verdict." *Huckins v. State*, 2020 WY 21, ¶ 10, 457 P.3d 1277, 1279 (Wyo. 2020). We must determine "whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt on the evidence presented." *Morones v. State*, 2020 WY 85, ¶ 8, 466 P.3d 300, 303 (Wyo. 2020).

> We examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial. The question for this Court is not whether the evidence was sufficient to establish guilt beyond a reasonable doubt, rather it is whether the evidence could reasonably support such a finding by the factfinder.

*Gore v. State*, 2019 WY 110, ¶ 9, 450 P.3d 1251, 1253 (Wyo. 2019) (internal citations and quotations omitted); *see also Granzer v. State*, 2010 WY 130, ¶ 8, 239 P.3d 640, 644 (Wyo.

2010) ("The jury has the responsibility to resolve conflicts in the testimony, weigh the evidence and draw reasonable inferences from the facts.").

[¶23] Mr. Neidlinger contends that the State failed to establish that he threatened Ms. Heying or that she perceived a threat because the only evidence of a threat was testimony elicited by defense counsel on cross-examination. He argues that this testimony was not substantive for purposes of determining sufficiency. First, he contends that the testimony was not admissible as a prior out-of-court statement under W.R.E. 801(d)(1), and that it thus could only be used to impeach and not as substantive evidence. In his reply brief, he further elaborates that even if the testimony was admissible under some other hearsay exception, it was not substantive evidence because defense counsel elicited it solely for impeachment.

[¶24] Ordinarily, a witness' prior statement may not be used at trial if offered as substantive evidence of a fact in issue, unless the statement was sworn testimony inconsistent with the witness' trial testimony, is a statement of identification of a person made after perceiving him, or, if consistent with the witness' trial testimony, is offered to rebut a charge that the witness' trial testimony is a recent fabrication or the result of improper influence or motive. *See* W.R.E. 801(d)(1). Mr. Neidlinger argues that Ms. Heying's statements to the SANE Nurse and the investigating deputies were inadmissible because they did not meet the requirement of Rule 801(d)(1)(A) that the statement "was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition . . . ." W.R.E. 801(d)(1)(A). The flaw in his argument is that it presumes the only basis for admitting the statements was that provision of Rule 801.

[¶25] A prior statement may also be admitted as substantive evidence if it fits a recognized exception to the hearsay rule. *Moore v. State*, 2013 WY 146, ¶ 11, 313 P.3d 505, 508 (Wyo. 2013); W.R.E. 803. For example, in *Morones*, we held that a victim's statements to a SANE nurse for the purpose of medical treatment and examination fit within the hearsay exception in W.R.E. 803(4), and that they were therefore admissible as substantive evidence. ¶¶ 9-14, 466 P.3d at 303-05. In *Rodriguez v. State*, we recognized that when a police officer testified about a victim's prior statements that the statements "might have been admissible under one of the exceptions to the hearsay rule," including the excited utterance exception. 2010 WY 170, ¶ 16, 245 P.3d 818, 823 (Wyo. 2010).

[¶26] Because no objection was made to foundation for their admission, we will not evaluate the admissibility of Ms. Heying's prior statements under possible hearsay exceptions. We have observed that it is unfair for a party to challenge foundation for the first time on appeal because it deprives the offering party of the opportunity to correct any deficiency in the proof. *Mayhew v. State*, 2019 WY 38, ¶ 53, 438 P.3d 617, 634 (Wyo. 2019) (quoting *Young v. State*, 2016 WY 70, ¶¶ 16, 18, 375 P.3d 792, 796-98 (Wyo. 2016)); *see also Schreibvogel v. State*, 2010 WY 45, ¶ 28, 228 P.3d 874, 884 (Wyo. 2010) (noting the difficulty in identifying specific basis for admissibility when no objection is made).

6

For this reason, we have held that "objections based on the adequacy of foundation must be made when evidence is offered, and the failure to make a timely objection will preclude appellate review." *Putnam v. State*, 2020 WY 133, ¶ 22 n.2, 474 P.3d 613, 619 n.2 (Wyo. 2020) (quoting *Mayhew*, ¶ 54, 438 P.3d at 634). In this case, not only did defense counsel not object, she asked the questions of which Mr. Neidlinger now complains. We will therefore proceed as if Ms. Heying's prior statements were admissible.

[¶27] This brings us to Mr. Neidlinger's argument that regardless of the admissibility of the statements, this Court may not rely upon them as substantive evidence to assess the sufficiency of the evidence because defense counsel elicited them solely to attack Ms. Heying's credibility—that is, to impeach her. In support of this argument he cites to *Seward v. State*, 2003 WY 116, ¶ 37, 76 P.3d 805, 820-21 (Wyo. 2003), and *Channel v. State*, 592 P.2d 1145, 1149-50 (Wyo. 1979).

[¶28] Neither *Seward* nor *Channel* involved a sufficiency of the evidence question, and therefore neither addressed the kind of evidence this Court may rely on in reviewing a sufficiency claim. *Seward* concerned the exclusion of a prior inconsistent statement, and we explained the proper use of that evidence, noting that if such evidence is admitted, the jury should be instructed on the limited purpose for which it may be used. ¶ 37, 76 P.3d at 820-21. In *Channel*, we reversed the defendant's conviction because the trial court refused to give a limiting instruction on the proper use of an out-of-court statement at defense counsel's request after the State impeached a witness with a prior inconsistent statement. 592 P.2d at 1149-50.

[¶29] As with other evidence, the only way to restrict the jury's consideration of evidence obtained through cross-examination is by way of a limiting instruction. *See* W.R.E. 105. We recently explained:

> "When evidence which is admissible as to one (1) party or for one (1) purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly." W.R.E. 105. Even if a limiting instruction is warranted, the district court is not obligated to give one, if it is not requested. *Chapman v. State*, 2001 WY 25, ¶ 22, 18 P.3d 1164, 1174 (Wyo. 2001) ("'If . . . the defendant does not present an appropriate request, the trial court is not required to give the limiting instruction.'" (quoting *Rigler v. State*, 941 P.2d 734, 738 (Wyo. 1997)). ***Evidence admitted without a limiting instruction "'may be considered for any legal purpose for which it is admissible, although the evidence, when introduced, was intended for a particular purpose.'"*** *Grabill v. State*, 621 P.2d 802, 811 (Wyo. 1980) (quoting

7

> *Westland Nursing Home, Inc. v. Benson*, 33 Colo.App. 245,
> 517 P.2d 862, 866 (1974)). *See also*, *Tombroek* [*v. State*, 2009
> WY 126], ¶ 13, 217 P.3d [806,] 811 [(Wyo. 2009)] ("***Because
> there was no request for a limiting instruction, we must
> assume that the jury used the evidence for whatever purpose
> it chose[.]***"); *Connolly v. State*, 610 P.2d 1008, 1011 (Wyo.
> 1980) ("To charge the trial court with the duty of protecting
> defendant's right to receive a limiting instruction, thereby
> relieving the attorney of that obligation, would be an exercise
> in role-switching which we are not ready to condone, and
> which would, in any case, be contrary to the procedural
> responsibilities contemplated by [W.R.E.] 105[.]").

*Hicks v. State*, 2021 WY 2, ¶ 31, 478 P.3d 652, 661 (Wyo. 2021) (emphasis added); *see also Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007) ("Once evidence has been admitted without a limiting instruction, it is part of the general evidence and may be used for all purposes."); *United States v. White*, 68 F. App'x 870, 874-76 (10th Cir. 2003) (no plain error where defense counsel did not request limiting instruction for prior inconsistent statements and did not object to prosecution's use of them in closing).

[¶30] Defense counsel elicited Ms. Heying's prior statements concerning Mr. Neidlinger's threats through her cross-examination of investigating deputies and the SANE Nurse, and she used them effectively in closing argument to attack Ms. Heying's credibility by suggesting that her story had changed. Though that testimony may have been intended only to impeach Ms. Heying, defense counsel did not request a limiting instruction to restrict the purposes for which the jury could consider it. Nor did she object when the court instructed the jury to consider all the evidence and give it the weight to which it found the evidence was entitled, or when the State used the statements in its summation to argue that the elements of Count III had been proved.

[¶31] If evidence comes in without objection or a request for a limiting instruction, the jury may use it for any legitimate purpose. *Hicks*, ¶ 31, 478 P.3d at 661. We review the record before us to determine "whether any rational trier of fact could have found that the essential elements of a charged crime were proven beyond a reasonable doubt ***on the evidence presented***." *Morones*, ¶ 8, 466 P.3d at 303 (emphasis added).[1]

---

[1] The parties raise some question as to whether the phrasing of our standard of review itself limits our consideration to the State's evidence. *See*, *e.g.*, *Gore*, ¶ 9, 450 P.3d at 1253 ("We examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant."). That is not the intention of our standard of review. Our standard defers to the jury's weighing of the evidence to reach its guilty verdict, so we examine the evidence that the jury was entitled to consider and that supports its verdict. *Thompson v. State*, 2018 WY 3, ¶ 14, 408 P.3d 756, 760 (Wyo. 2018) ("[W]e defer to the jury as the fact-finder and assume they believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt.").

[¶32] Because we can consider the evidence elicited on cross-examination to determine sufficiency, we turn then to whether the evidence supported the jury's verdict. The jury was instructed that the necessary elements for the crime of sexual assault in the first degree as charged in Count III of the Amended Information are:

1. On or about June 8, 2018;

2. In Campbell County, Wyoming;

3. The Defendant, Terry E. Neidlinger;

4. Inflicted sexual intrusion on Debra Heying by engaging in anal intercourse with her, and;

5. The Defendant caused the submission of Debra Heying by threat to inflict death, serious bodily injury or extreme physical pain on anyone; and

6. Debra Heying reasonably believed the Defendant had the present ability to execute on those threats.

The jury found that the Defendant caused submission of the victim by threat to inflict serious bodily injury and extreme physical pain on her, but not through a threat to kill her.

[¶33] The record is replete with evidence from which a reasonable jury could conclude that Mr. Neidlinger caused submission of Ms. Heying by threat of serious bodily injury or extreme physical pain, and that she reasonably believed he had the present ability to execute those threats when he assaulted her. Ms. Heying testified that she felt threatened, that she told Mr. Neidlinger to stop and cursed at him, and that she was bleeding from her rectum after the assault. She also described a knife that Mr. Neidlinger carries and testified that he had previously held it to her throat.

[¶34] SANE Nurse Nancy Stolpe testified that Ms. Heying had multiple injuries when she came into the emergency room on June 8, 2018, and her exam notes documenting the injuries and the photographs of the injuries were received in evidence. She described the severity of Ms. Heying's injuries, noting that the four-centimeter tear to her rectum was worse than any she had ever seen. She further testified that Ms. Heying told her that Mr. Neidlinger said to lay on her side, and that if she opened her mouth, he would stick

---

In many cases, the evidence that supports the jury's verdict will likely be the State's evidence, but our review is not so limited if supporting evidence is found in the cross-examination of a state witness or in the defense case itself. *Id.* ¶ 14, 408 P.3d at 761 ("We accept all evidence favorable to the State as true . . . .").

something in it, knock her teeth out, and cut out her tongue. Nurse Stolpe also testified that Ms. Heying told her that Mr. Neidlinger put her head between his legs, choked her out, and then inserted something in her rectum.

[¶35] Deputy Jeff Mooney testified that Ms. Heying told him that Mr. Neidlinger threatened her, demanded that she get back into bed, and said that he would knock her teeth out and cut her tongue out if she did not comply with his demands. Deputy Mooney further verified that Ms. Heying reported the anal penetration was against her wishes.

[¶36] Deputy Aaron English with the Campbell County Sheriff's Office testified to previous reported incidents between Mr. Neidlinger and Ms. Heying, which included Mr. Neidlinger assaulting Ms. Heying by putting his hands around her neck, which resulted in "some slight bruising on the side of her neck." Deputy Wade Dupis with the Campbell County Sheriff's Office testified that when he executed a search warrant on Mr. Neidlinger's home after the assault they found what appeared to be the knife described by Ms. Heying "off to the side of [Mr. Neidlinger's] bed . . . within about six feet . . . of where he was laying," and that there were numerous knives in sporadic places all around Mr. Neidlinger's bedroom.

[¶37] A rational jury could have determined that Mr. Neidlinger caused the submission of Ms. Heying by threat of serious bodily injury or extreme physical pain which she reasonably believed he had the present ability to execute on the evidence we have just described. The evidence was therefore sufficient to support the conviction for first-degree sexual assault.

## II. Special Interrogatories on Verdict Form

[¶38] In his second assignment of error, Mr. Neidlinger asserts that the district court abused its discretion by rejecting defense counsel's proposed verdict form and in using a different form. Mr. Neidlinger's argument is not that the verdict form actually used contains an error of law, but instead that the special interrogatories included in it should have been asked only after the jury addressed whether or not Mr. Neidlinger was guilty of the offense.[2]

---

[2] Mr. Neidlinger argues for the first time on appeal that the verdict form was problematic because it did not include language about whether "the victim reasonably believes that the actor has the present ability to execute these threats" pursuant to Wyo. Stat. Ann. § 6-2-302(a)(ii). We need not address this issue because it was not raised in the district court. *Thompson*, ¶ 24, 408 P.3d at 763 ("Generally, in the absence of a fundamental error affecting a substantial right of the appellant, an issue raised for the first time on appeal will not be considered. The rationale behind this rule is that it is unfair to reverse a ruling of a trial court for reasons that were not presented to it, whether it be legal theories or issues never formally raised in the pleadings nor argued to the trial court."). We note, however, that special interrogatories are required only when a court includes the entire language of a statute in its jury instructions and there are alternate theories of a statutory element. *See May v. State*, 2003 WY 14, ¶ 22, 62 P.3d 574, 581 (Wyo. 2003). Here there is

[¶39]  The special verdict form required the jury to consider each theory of a possible threat under Wyo. Stat. Ann. § 6-2-302(a)(ii) before turning to the question of Mr. Neidlinger's guilt.  The jury answered the questions on the special verdict form as follows:

COUNT 3 (Case No. 8403)

Before you deliberate as to your ultimate verdict, you must answer all of the following questions.  As with all other deliberations in cases of this nature, your answers must be based upon your unanimous, collective opinion and must be determined beyond a reasonable doubt.

1)  Did Defendant cause submission of Debra Heying by threat to inflict death on anyone?

Yes    (No)
(Circle one choice only)

2)  Did Defendant cause submission of Debra Heying by threat to inflict serious bodily injury on anyone?

(Yes)    No
(Circle one choice only)

3)  Did Defendant cause submission of Debra Heying by threat to inflict extreme physical pain on anyone?

(Yes)    No
(Circle one choice only)

If your answers to questions #1, #2 and #3 are all "No", you must find the Defendant NOT GUILTY as to Count 3 of the Amended Information in Case No. 8403.

If any of your answers to questions #1, #2 and #3 are "Yes", you must continue to deliberate and determine your ultimate verdict in accordance with all of the instructions.

---

no alternate theory on the element of the victim's reasonable belief and thus no special interrogatory was required.

We the jury, duly empaneled and sworn to try the above entitled cause, do unanimously find that as to the crime of **Sexual Assault in the First Degree**, as charged in Count 3 of the Amended Information in Case No. 8403, the Defendant, TERRY E. NEIDLINGER, is:

$\checkmark$    Guilty

_____ Not Guilty

[¶40] At trial, defense counsel objected to the above verdict form and instead requested that the following verdict form be submitted to the jury for Count III instead:

> III. As to Count III, Sexual Assault in the first degree on June 8th 2018:
>
> _____ Not Guilty
>
> _____ Guilty (before you can mark this you must agree that at least one of the findings below applies)
>
>      _____ a. We unanimously find that the Defendant caused submission of Debra Heying by threat to inflict death.
>
>      _____ b. We unanimously find that the Defendant caused submission of Debra Heying by threat to inflict serious bodily injury.
>
>      _____ b. [sic] We unanimously find that the Defendant caused submission of Debra Heying by threat to inflict extreme physical pain.

Mr. Neidlinger contends that the verdict form unduly emphasized certain elements and invaded the independence of the jury by leading it to a guilty verdict.

[¶41] Because Mr. Neidlinger objected to the verdict form below, we review the district court's decision for an abuse of discretion. *See generally Dugan v. State*, 2019 WY 112, ¶ 34, 451 P.3d 731, 742 (Wyo. 2019), *cert. denied*, ⸺ U.S. ⸺, 140 S.Ct. 1298, 206 L.Ed.2d 377 (2020) (reviewing special verdict form with a special interrogatory for an abuse of discretion); *Schmuck v. State*, 2017 WY 140, ¶ 45, 406 P.3d 286, 301 (Wyo. 2017) (holding when defense counsel objects at trial we review jury instructions for an abuse of discretion); *see also United States v. Reed*, 147 F.3d 1178, 1180 (9th Cir. 1998) (reviewing special verdict form for abuse of discretion since verdict form is in essence a jury

instruction).  District courts "are afforded substantial latitude to tailor jury instructions to the facts of the case." *Dugan*, ¶ 34, 451 P.3d at 742 (quoting *Birch v. State*, 2018 WY 73, ¶ 12, 421 P.3d 528, 533 (Wyo. 2018)).  So long as the verdict form and "jury instructions correctly state the law and adequately cover the issues presented in the trial, reversible error will not be found."  *Id.*; *see also Kite v. State*, 2018 WY 94, ¶ 21, 424 P.3d 255, 262 (Wyo. 2018).

[¶42]  "An incorrect ruling on an instruction [or verdict form] must be prejudicial to constitute reversible error."  *Schmuck*, ¶ 45, 406 P.3d at 301 (quoting *Hurley v. State*, 2017 WY 95, ¶ 8, 401 P.3d 827, 830 (Wyo. 2017)).  A defendant is not prejudiced unless he can establish that the given instructions or verdict form confused or misled the jury.  *Tingey v. State*, 2017 WY 5, ¶ 40, 387 P.3d 1170, 1181 (Wyo. 2017) ("Because the purpose of jury instructions is to provide guidance on the applicable law, prejudice will result when the instructions confuse or mislead the jury."); *Giles v. State*, 2004 WY 101, ¶ 14, 96 P.3d 1027, 1031 (Wyo. 2004) ("Prejudice will be determined to exist only where an appellant demonstrates that the instruction given confused or misled the jury with respect to the proper principles of law.").

[¶43]  We recognize that in civil cases special interrogatories are routinely used to cause the jury to make specific findings so that the trial judge can enter an accurate judgment. *See generally* W.R.C.P. 49; *Rissler & McMurry Co. v. Atl. Richfield Co.*, 559 P.2d 25, 30 (Wyo. 1977).  In criminal cases, however, the use of special interrogatories is more controversial, and they are generally not favored.  *See, e.g.*, *United States v. Pierce*, 940 F.3d 817, 821 (2d Cir. 2019) (noting that criminal rules do not have a Rule 49 counterpart and "special interrogatories are generally disfavored in criminal cases"); *United States v. Desmond*, 670 F.2d 414, 416 (3d Cir. 1982) (reasons for antipathy toward special verdicts in criminal trials include the doctrine of "jury nullification," and the power of a jury "to bring in a verdict in the teeth of both law and facts"); *United States v. Munz*, 542 F.2d 1382, 1389 (10th Cir. 1976) ("[P]roper use was made here of the standard "not guilty" and "guilty" forms, which was in accord with the strong policy favoring submission of a general verdict form to preserve the jury's function in a criminal case, unrestricted by any requirement of a special verdict."); 3 Wright & Miller, *Federal Practice and Procedure: Criminal 2d*, § 512 (4th ed. Oct. 2020 update) ("Criminal law favors general verdicts over special verdicts.").

[¶44]  The Third Federal Circuit Court of Appeals summarized the general concerns with special verdict forms as follows:

> To ask the jury special questions might be said to infringe on its power to deliberate free from legal fetters; on its power to arrive at a general verdict without having to support it by reasons or by a report of its deliberations; and on its power to follow or not to follow the instructions of the court. Moreover,

any abridgment or modification of this institution would partly restrict its historic function, that of tempering rules of law by common sense brought to bear upon the facts of a specific case.

*Reed*, 147 F.3d at 1180; *see also United States v. McCracken*, 488 F.2d 406, 418 (5th Cir. 1974).

[¶45] In *Black v. United States*, the United States Supreme Court noted that the absence of a criminal rule authorizing special verdicts suggests that a trial court should proceed with caution in using them in a criminal case, even though in some cases they may be appropriate. 561 U.S. 465, 472, 130 S. Ct. 2963, 2968, 177 L. Ed. 2d 695 (2010). We echo that sentiment. *See also Pierce*, 940 F.3d at 821 ("[C]are must be taken in drafting interrogatories to minimize the risk of inconsistent verdicts."); *United States v. Hedgepeth*, 434 F.3d 609, 613 (3d Cir. 2006) ("The 'disfavor with which courts view special interrogatories in criminal cases results from interrogatories that lead the jury in a step-by-step progression to a verdict of guilty.' Therefore, our Court has held that, when special findings are necessary for sentencing purposes, 'the appropriate information may be obtained by submitting special interrogatories to the jury after a guilty verdict has been returned.'" (internal citation omitted) (citing *Desmond*, 670 F.2d at 416)).

[¶46] Whether a special verdict form is appropriate in a given criminal case depends on the circumstances of that case. *United States v. Stonefish*, 402 F.3d 691, 698 (6th Cir. 2005) ("[E]xceptions to the general rule disfavoring special verdicts in criminal cases have been expanded and approved in an increasing number of circumstances."); *Reed*, 147 F.3d at 1181 (reviewing cases from eight different federal circuits and concluding "that use of a special verdict form is a matter of the district court's discretion to be determined on the facts of each case")). "Special verdict forms should not be used in cases where they confuse the jury or improperly shift the burden of proof on an issue from the government to the defendant." *Stonefish*, 402 F.3d at 698.

[¶47] On the other hand, in *Tanner v. State*, we held that if a jury returns a general verdict of guilt that fails to identify the elements the jury found, and it was instructed on alternate theories of a crime, the record must support each alternative theory beyond a reasonable doubt. 2002 WY 170, ¶¶ 13-15, 57 P.3d 1242, 1246 (Wyo. 2002). Subsequently, we elaborated that "the State is not prohibited from presenting alternate theories of the crime. However, if it is going to do so it must provide sufficient evidence of both or utilize a special interrogatory verdict form." *Crabtree v. State*, 2005 WY 62, ¶ 12 n.1, 112 P.3d 618, 621 n.1 (Wyo. 2005); *see also May v. State*, 2003 WY 14, ¶ 28, 62 P.3d 574, ¶ 28 (Wyo. 2003). Additionally, in *Giles*, we held:

> [T]he terms "immodest, immoral, or indecent" as utilized within § 14-3-105 are stated in the disjunctive, representing a choice among alternatives. Therefore, we clarify that a jury

must find that a defendant acted in at least one of the enumerated manners before concluding a defendant is guilty of violating § 14-3-105. As such, a special jury verdict form should be presented to a jury deliberating such issues to clearly indicate which, if any, of these alternative detailed acts occurred under the evidence presented. The use of such a special jury verdict form will leave no doubt as to what circumstances the jury found the crime to have been committed in each particular case. Additionally, the use of such a form will better ensure that the jury is properly instructed as to the applicable law, given the actual issues raised by the evidence, and will better assist the parties and this court should appellate proceedings prove necessary. *Duckett v. State*, 966 P.2d 941, 943-44 (Wyo. 1998); *Brett v. State*, 961 P.2d 385, 389 (Wyo. 1998); *Baier v. State*, 891 P.2d 754, 756 (Wyo. 1995); *Hatheway v. State*, 623 P.2d 741, 743 (Wyo. 1981).

*Giles*, ¶ 46, 96 P.3d at 1043; *cf. Dougherty v. State*, 2010 WY 127, ¶ 28, 239 P.3d 1176, 1184 (Wyo. 2010) (finding that the district court did not violate a clear and unequivocal rule of law by treating "indecent" and "obscene" as a single element and declining to give the jury a special verdict form deciding between the two alternatives under the statute).

[¶48]   The State quoted all of Wyo. Stat. Ann. § 6-2-302(a)(ii) in the charging documents, and the jury instructions also quoted that statute.  Since the statute is disjunctive and offers alternatives, and because the jury had to find whether or not Mr. Neidlinger violated at least one of its provisions before it could render a guilty verdict, we cannot find that the district court abused its discretion in using the special verdict form it did to assure an adequate record.  *See Crabtree*, ¶ 12 n.1, 112 P.3d at 621 n.1 (citing *May*, ¶ 28, 62 P.3d at 582-83); *see also Giles*, ¶ 46, 96 P.3d at 1043.

[¶49]   Nor do we find reversible error in the order in which the interrogatories were presented.  While we understand the concern that stepped verdict forms may in certain instances lead a jury step by step to a guilty verdict, we do not believe that the form in this case created a sufficient risk of that to require reversal.  Following the three questions concerning the alternative threat elements, the form specifically instructed the jury to resume its deliberations on the question of guilt if it answered yes to any of the alternatives presented.  It also instructed the jury to continue to deliberate and to determine its "ultimate verdict in accordance with all of the instructions."  Furthermore, the jury answered "no" to the question of whether the evidence showed a "threat to inflict death" and "yes" to the alternative theories by which a threat could be made under the statute.

15

[¶50] Under the circumstances, we cannot conclude that the jury was led to a certain conclusion by the special interrogatories, and we find no abuse of discretion in the district court's use of the special verdict form it used in this case.

## III.  Ineffective Assistance of Counsel on Joinder of Cases

[¶51] For his third issue, Mr. Neidlinger alleges that he did not receive effective assistance of trial counsel.  The district court held an evidentiary hearing on Mr. Neidlinger's claims of ineffective assistance of counsel as described in *Calene v. State*, 846 P.2d 679, 692 (Wyo. 1993), and W.R.A.P. 21.  After the hearing, the court issued a detailed order setting forth its factual findings and denying the motion.

[¶52] In the district court, defense counsel alleged three grounds for finding ineffective assistance of counsel: (1) failure to file a motion to suppress the contents of Mr. Neidlinger's cell phone; (2) filing a motion for joinder; and (3) failure to permit Mr. Neidlinger to testify.  On appeal, he challenges only the decision regarding defense counsel's motion for joinder, and he argues that though trial counsel has discretion in making strategic decisions, the decision to seek to join the two cases was constitutionally deficient and that "a reasonable probability exists that Mr. Neidlinger would have enjoyed a more favorable verdict" had defense counsel not requested joinder of the charges in cases CR 8464 and CR 8403.

[¶53] The standard by which we review ineffective assistance of counsel claims is well established:

> A criminal defendant has the right to the effective assistance of counsel. U.S. Const. amend. VI; Wyo. Const., art. 1, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) ("[T]he right to counsel is the right to the effective assistance of counsel." (quotations omitted)). When a defendant claims he has been denied that right, he must show both that counsel's performance was deficient, and he was prejudiced as a result. *Galbreath v. State*, 2015 WY 49, ¶ 5, 346 P.3d 16, 18 (Wyo. 2015); Strickland, 466 U.S. at 687, 104 S.Ct. at 2064. Counsel acts deficiently when he "fail[s] to render such assistance as would have been offered by a reasonably competent attorney." *Galbreath*, ¶ 5, 346 P.3d at 18 (quoting *Bloomer v. State*, 2010 WY 88, ¶ 18, 233 P.3d 971, 976 (Wyo. 2010)). "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of [appellant's] trial would have been different.'" *Id.* (quoting *Bloomer*, ¶ 18, 233 P.3d at 976). A failure to establish one of the two prongs dooms an ineffective

assistance of counsel claim. *Dettloff v. State*, 2007 WY 29, ¶ 19, 152 P.3d 376, 382 (Wyo. 2007).

Ineffective assistance of counsel claims are "mixed questions of law and fact." *Griggs v. State*, 2016 WY 16, ¶ 37, 367 P.3d 1108, 1124 (Wyo. 2016). We defer to a district court's factual findings unless clearly erroneous; we review de novo the court's legal conclusions, including whether counsel's conduct was deficient and whether defendant was prejudiced as a result. *Id.* We "invoke[ ] a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment. [T]he paramount determination is whether, in light of all the circumstances, trial counsel's acts or omissions were outside the wide range of professionally competent assistance." *Schreibvogel v. State*, 2010 WY 45, ¶ 47, 228 P.3d 874, 889 (Wyo. 2010) (citations and quotations omitted).

*Shields v. State*, 2020 WY 101, ¶ 44, 468 P.3d 1097, 1109-10 (Wyo. 2020) (quoting *Winters v. State*, 2019 WY 76, ¶¶ 11-12, 446 P.3d 191, 198-99 (Wyo. 2019)).

[¶54] Mr. Neidlinger does not challenge the district court's findings of fact as clearly erroneous. Therefore, we accept those findings as true as we consider his claim of ineffective assistance. *Shields*, ¶ 45, 468 P.3d at 1110. The district court found defense counsel's testimony highly credible, and that her motion to request joinder was a strategic decision which was further influenced by Mr. Neidlinger's own choices. Defense counsel testified that the decision to join CR 8403 and CR 8464 was driven both by trial strategy and by Mr. Neidlinger's insistence that he "was not going to go through two trials" and he "didn't want two bonds."

[¶55] Defense counsel also testified that she felt joining the two cases was a good legal strategy, because allowing the jury to see the voyeurism videos would "fully flesh-out the bizarre and maladjusted relationship between Ms. Heying and Mr. Neidlinger." She believed that the videos underlying the voyeurism charges demonstrated their "extraordinarily dysfunctional relationship," which in turn provided additional challenges to Ms. Heying's credibility. She also felt that the videos showed that Ms. Heying knew Mr. Neidlinger was taking videos of her while she was in the shower, and that they therefore supported an argument that both the videos and the intercourse between them were consensual. Finally, defense counsel believed that she "had a better chance of success" of a not guilty verdict on the voyeurism charges if she could "explain the whole relationship [between the parties] in one case."

17

[¶56] "When trial counsel makes a 'strategic decision' in a case, that decision is 'virtually unchallengeable.'" *Larkins v. State*, 2018 WY 122, ¶ 67, 429 P.3d 28, 44 (Wyo. 2018) (citing *Strickland*, 466 U.S. at 690-91, 104 S.Ct. at 2066). "An unfavorable verdict does not equate to ineffective assistance of counsel." *Larkins*, ¶ 67, 429 P.3d at 44 (citing *Woods v. State*, 2017 WY 111, ¶ 15, 401 P.3d 962, 969 (Wyo. 2017)). "We invoke a strong presumption that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable judgment." *Pickering v. State*, 2020 WY 66, ¶ 60, 464 P.3d 236, 256 (Wyo. 2020). As we have previously held, "[t]he defendant has the burden to overcome this presumption that, in light of the circumstances, the challenged action or failure of the attorney might be considered sound trial strategy." *Mellott v. State*, 2019 WY 23, ¶ 26, 435 P.3d 376, 386 (Wyo. 2019).

[¶57] Mr. Neidlinger has not overcome the presumption that trial counsel exercised reasonable judgment in making the tactical choice to ask the court to join the charges for trial. We have declined to find ineffective assistance under similar circumstances. *See Larkins*, ¶¶ 70-71, 429 P.3d at 45 (concluding trial counsel's decision in agreeing to the joinder of three different cases involving the abuse of multiple children in the defendant's care was not ineffective). Accordingly, we find no error in the district court's denial of Mr. Neidlinger's Rule 21 motion.

## IV.    Remand for Correction of Judgment and Sentence

[¶58] Mr. Neidlinger points out that there is a citation error in the judgment and sentence. Rule 32 of the Wyoming Rules of Criminal Procedure requires that a judgment of conviction after trial contain "[a]n adjudication as to each offense including the name and statute number for each convicted offense and whether such offense is a felony or misdemeanor." W.R.Cr.P. 32(b)(2)(C). In *Kite*, we held that when the written judgment and sentence contains the wrong subsection of a statute and the oral ruling does not set forth the correct subsection, we must remand for the limited purpose of correcting the clerical error and eliminating the discrepancy, which will ensure that the record is clear as required by W.R.Cr.P. 32. *Kite*, ¶¶ 14-15, 424 P.3d at 261.

[¶59] The district court's sentence on June 3, 2019 incorrectly stated that Mr. Neidlinger was found guilty of first-degree sexual assault in violation of Wyo. Stat. Ann. § 6-2-301(a)(i). At the sentencing hearing, the court sentenced Mr. Neidlinger on Count III, first-degree sexual assault, but it did not cite the statute in its oral ruling. The record shows that the State tried to address this defect by filing a motion for an order nunc pro tunc, which pointed out that the "statute listed for First Degree Sexual Assault is incorrect." However, the State's motion and prepared order also cited the wrong statute, and therefore the district court's order nunc pro tunc was also inaccurate.

[¶60] Mr. Neidlinger was arraigned on a charge of first-degree sexual assault for a violation of Wyo. Stat. Ann. § 6-2-302(a)(ii), and the jury was properly instructed and

convicted Mr. Neidlinger on that charge. We find that the discrepancy between the judgment and verdict is a clerical error, and although we affirm Mr. Neidlinger's conviction for the reasons discussed above, we remand for correction of the judgment and sentence to reflect that he was convicted of first-degree sexual assault under Wyo. Stat. Ann. § 6-2-302(a)(ii).

## **CONCLUSION**

[¶61] Because Mr. Neidlinger failed to show that trial counsel was constitutionally ineffective, we affirm the district court's denial of his Rule 21 motion for new trial. We further conclude that the district court did not abuse its discretion in using a special verdict form, and that the evidence was sufficient to support Mr. Neidlinger's conviction. We therefore affirm the judgment and sentence, but we remand for correction of the clerical error contained in it.