**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert L. REED, Defendant–Appellant.**

**No. 92–2868.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1993.

Decided June 25, 1993.

Bradley W. Murphy, Asst. U.S. Atty., Office of the U.S. Atty., Peoria, IL (argued), for plaintiff-appellee.

Richard H. Parsons, Peoria, IL (argued), for defendant-appellant.

Before BAUER, Chief Judge, RIPPLE, and KANNE, Circuit Judges.

BAUER, Chief Judge.

Robert Reed was convicted of bank robbery, unlawful use of a weapon, and possession of a firearm by a felon in violation of 18 U.S.C. §§ 2113(a), 924(c)(1), and 922(g). Reed appeals his conviction. We affirm.

## I.

On June 11, 1991, Robert Reed took a cab to the Community Bank in downtown Peoria, Illinois. Reed told the cab driver to wait while he went inside. Reed entered the bank with a gun hidden in his waistband and a note for a teller. Reed gave the note to a teller and told the teller not to set off any alarms. The note said, "Don't touch the alarm. This is a stickup. Put all big bills in the bag. I've got a gun." R.Doc. 25 at 12. In response to the note, the teller put $10,000 in cash in a bag and gave it to Reed. Reed left the bank, returned to the waiting cab, and told the driver to take him to the nearby Veteran's Administration Clinic, which the driver did. There, Reed called for another cab to take him home. Before the second cab arrived, members of the Peoria Police Department arrested Reed with the stolen money in hand.

Reed told the police that he robbed the bank because "voices" told him to do so. The effect these voices had on Reed form the basis of his appeal. Reed argues that he was legally insane when he robbed the bank. At his bench trial, Peoria police detective Michael Johnson testified that he was present when Reed was arrested and that he interviewed Reed at the police station that day. According to Johnson, Reed stated that voices told him to rob the bank. Reed also told Johnson that he (Reed) knew that what the voices were telling him to do was wrong, but that he robbed the bank anyway.

Psychiatrist Robert Chapman, M.D., testified on Reed's behalf. He stated that Reed suffers from a severe mental disease—a chronic, undifferentiated type of schizophrenia. Chapman opined that, on the date of the robbery, Reed was unable to appreciate the quality and wrongfulness of his acts, particularly his act of robbing the bank. Chapman testified that the voices told Reed to take his gun, go to the bank, get money, and give it to the poor. Dr. Chapman did concede, however, that Reed may have possessed knowledge at the time of the robbery that his actions were illegal. He also admit-ted that it was possible for a person who suffers from schizophrenia to have the intellectual capacity to appreciate the wrongfulness of his or her conduct.

The government called three expert witnesses to rebut Chapman's testimony. Victor Mintek, M.D., testified that he had been Reed's treating physician since September 1989. Mintek disagreed with Chapman's diagnosis and stated that Reed suffers from a milder form of schizophrenia. Mintek also testified that on June 4, 1992, one week before the robbery, Mintek saw Reed and administered a regular dose of Prolixin, Reed's anti-psychotic tranquilizer. According to Mintek, it would not have been possible for Reed to have had a serious psychotic episode one week after receiving the Prolixin injection.

Next, forensic psychologist William T. Bickert, Ph.D., testified that he had examined Reed from July 3, 1991 until July 29, 1991 pursuant to the district court's commitment order. In Bickert's opinion, Reed suffers from chronic paranoid schizophrenia. Dr. Bickert expressed his skepticism at Reed's claim that he had heard voices. Further, Bickert stated that Reed's mental disease would not have prevented him from understanding or appreciating the nature, quality, or wrongfulness of his acts.

Finally, psychiatrist Robert Benson, M.D., testified that he had examined Reed during December 1991. Benson stated that, in his opinion, Reed did not fit the criteria of schizophrenia, especially in light of Reed's drug and alcohol abuse. Benson concluded that Reed's schizophrenia was in remission, that Reed did not suffer from a severe mental disease or defect, and that Reed did appreciate the nature and quality of his wrongful act of robbing the bank.[1]

The district court carefully weighed the evidence, rejected Reed's insanity defense, and found him guilty of bank robbery, unlawful use of a weapon, and possession of a firearm by a felon. Reed contends that the

---

1. There was evidence that Dr. Benson avoided the service of the subpoena for his appearance to testify. The district court allowed his testimony, but apparently discounted it to some unspecified extent. R.Doc. 31 at 6–14, 16–22.

district court's insanity analysis was errone-ous.

## II.

 Insanity, for our purposes, is a le-gal term. *We do not ask whether Reed is insane by psychiatric or psychological stan-dards.* Rather, we ask only whether Reed has established insanity as defined by the Legal Insanity Defense Reform Act (the "Act"). 18 U.S.C. § 17.[2] Under that Act, Reed can establish the affirmative defense of legal insanity only if he proves two facts by clear and convincing evidence. 18 U.S.C. § 17. First, Reed must prove that he suf-fered from a severe mental disease or defect. Proof that he had a mental disorder is not enough. The Act requires that the mental disorder be *severe*. *United States v. Salava,* 978 F.2d 320, 322 (7th Cir.1992). Second, if Reed proves this first element, the Act re-quires that he prove that his severe mental disorder rendered him unable at the time of the crime to appreciate the nature and quali-ty or the wrongfulness of his acts. *Id.; United States v. West,* 962 F.2d 1243 (7th Cir.1992). The burden of proving insanity remains on Reed at all times. Finally, whether Reed has proven that he was legally insane at the time he robbed the bank is a question to be decided by the trier of fact, Fed.R.Evid. 704(b), and we will not reverse that finding unless it is clearly erroneous. *United States v. Freeman,* 804 F.2d 1574, 1577 (11th Cir.1986).

 Reed has not met his burden and the district court's conclusion is not clearly erro-neous. The evidence suggests that Reed suffered from a mental disorder, perhaps even a severe one. Reed did not, however, prove that his mental disorder prevented him from understanding that he was doing some-thing wrong.

2. 18 U.S.C. § 17 provides:
 (a) *Affirmative defense.*—It is an affirmative defense to a prosecution under any Federal statute that, at the time of the commission of the acts constituting the offense, the defendant, as a result of a severe mental disease or defect, was unable to appreciate the nature and quali-ty or the wrongfulness of his acts. Mental disease or defect does not otherwise constitute a defense.

We note initially that the Act allows the district judge, as the trier of fact in this case, to find Reed legally sane even if the testify-ing psychiatrists or psychologists conclude otherwise. *West,* 962 F.2d at 1249. But the evidence was overwhelming that, although he may have suffered from a mental disorder, Reed did not fail to understand that his criminal behavior was wrong. *See United States v. Knott,* 894 F.2d 1119, 1121–22 (9th Cir.) (defendant who suffered from schizo-phrenia did not prove legal insanity), *cert. denied,* 498 U.S. 873, 111 S.Ct. 197, 112 L.Ed.2d 158 (1990); *United States v. Du-bray,* 854 F.2d 1099, 1101 (8th Cir.1988) (psy-chiatric diagnoses of defendant as anti-social, poorly adjusted, emotionally disturbed, and, possibly, mentally ill did not establish legal defense of insanity). In fact, Reed admitted that he knew that the voices were telling him to do something wrong. R.Doc. 26 at 129, 132–33. Further, Reed's own witness, Dr. Chapman, acknowledged that Reed may have known when he robbed the bank that such behavior was illegal. Chapman stated that a person with Reed's mental disorder could appreciate the wrongfulness of such conduct. Matched with the testimony of the govern-ment's three experts, the district court could reasonably have found that Reed was not legally insane when he robbed the bank.

## III.

At most, Reed has shown that he suffered from a severe mental illness when he robbed the bank. The Act required him to do much more than that to establish the affirmative defense of legal insanity. Consequently, we conclude that the district court's decision that Reed failed to establish that he was legally insane was not clearly erroneous.[3]

 (b) *Burden of proof.*—The defendant has the burden of proving the defense of insanity by clear and convincing evidence.

3. Reed also argued that the district court misap-plied the insanity test. Reading the district court's oral ruling as a whole, it is clear that the district court clearly understood and properly applied the insanity test to Reed's case.

The judgment of the district court is therefore

AFFIRMED.