BURKE, Chief Justice.
[¶1] Appellant, Doyle Eugene Gabbert, was convicted of eight felonies following a bench trial. He contends the district court erred in determining that he failed to prove he was not guilty by reason of mental illness or defect. We affirm.
ISSUE
[¶2] Appellant presents one issue:
Did the district court err when it held that Mr. Gabbert had failed to prove that he was not guilty by reason of mental illness or defect?
FACTS
[¶3] Appellant committed a series of crimes over the course of three days in August 2016, while on parole from a lengthy prison sentence. On August 10, 2016, while driving in Casper, Appellant turned without using a signal and cut off another motorist. When the other driver raised his hands in exasperation, Appellant took offense. He pulled up behind the motorist, exited his vehicle, and lifted up his shirt, revealing a handgun. Appellant fired the gun at the motorist as he drove away, breaking both the front and back windshield of the vehicle.
[¶4] After this incident, Appellant abandoned his vehicle, borrowed a car from an acquaintance, left town and went to a motel near Evansville where a friend had procured a room for him. Prior to leaving for Evansville, he told the acquaintance that the police would be looking for him. Appellant then sent a text message to his parole agent, telling her that "I bring everything on myself; it's not just happening to me. I have been getting high and doing all kinds of stupid shit. So who knows what's coming back on me now." He also told his parole officer that he was in Sheridan instead of Evansville. Appellant told his parole agent that he was staying in Sheridan because he "didn't want her thinking I was in town so she could come grab me."
[¶5] On August 12, Appellant thought the police had found him at the motel, and he texted a friend that "the God damn cops found me in my motel somehow, and I had to haul ass." Appellant ran to a nearby house and his friend picked him up. While driving away, the friend nearly collided with another car while taking a wide turn at an intersection. Kane Knight, the driver of the car, had to "slam on the brakes to stop." In the car with Mr. Knight were Trentyn Graves, and Mr. Graves's mother, Julia Oliver. Appellant thought that one of those passengers had "flipped [him] off," and he told his friend to follow them. Mr. Knight noticed that Appellant was waving around a gun as the friend drove the car.
*174 [¶6] Appellant and his friend followed the other vehicle into the parking lot of a grocery store. As Mr. Knight, Mr. Graves, and Ms. Oliver walked into the store, they heard Appellant hit his pistol against the windshield of Mr. Knight's car. While holding a gun wrapped in a hooded sweatshirt, Appellant demanded Mr. Knight give him the keys to his car. Mr. Knight refused. Appellant unwrapped the sweatshirt to reveal the pistol and again demanded the keys. Ms. Oliver told Appellant not to point his gun at her, grabbed Appellant's wrist, and pointed the gun at the ground. A witness called 911.
[¶7] Appellant and his friend left the scene, and law enforcement began to pursue them. When Appellant noticed that they were being followed by the police, he told his friend to pull over, exited the vehicle and began running away. After running a short distance, Appellant stole a parked minivan. Law enforcement followed him and, after weaving through traffic, Appellant crashed the van. He then attempted to steal a delivery truck before he was apprehended and arrested.
[¶8] The State charged Appellant with three counts of aggravated assault and battery, in violation of Wyo. Stat. Ann. § 6-2-502(a)(iii) (LexisNexis 2017); one count of aggravated robbery, in violation of Wyo. Stat. Ann. § 6-2-401(c)(ii) (LexisNexis 2017); two counts of theft, in violation of Wyo. Stat. Ann. §§ 6-3-402(a) and (c)(i) (LexisNexis 2017); one count of unlawful possession of a firearm, in violation of Wyo. Stat. Ann. § 6-8-102 (LexisNexis 2015) ; and one count of possession of a deadly weapon with unlawful intent, in violation of Wyo. Stat. Ann. § 6-8-103 (LexisNexis 2017). Appellant entered pleas of not guilty and not guilty by reason of mental illness or defect (NGMI).
[¶9] As a result of the NGMI plea, the district court ordered the Wyoming Department of Health to evaluate Appellant pursuant to Wyo. Stat. Ann. § 7-11-304(d) (LexisNexis 2017). Appellant was evaluated at the Wyoming State Hospital by Dr. Alex Yufik, a board certified forensic psychologist. Dr. Yufik found that Appellant did not have a mental illness or deficiency as defined by § 7-11-304 and that he did not lack the substantial capacity to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law. He diagnosed Appellant with "antisocial personality disorder" and an "amphetamine-type substance disorder." The doctor attributed Appellant's auditory hallucinations and paranoid behavior to that disorder, in part because Appellant only suffered psychotic symptoms when he was using methamphetamine. Dr. Yufik also noted that, during the evaluation, Appellant stated that, "if a police officer was on the scene during the first or second confrontation, he would not have pulled the gun or fired." Dr. Yufik found that this statement supported his conclusion that Appellant did not lack the capacity to appreciate the wrongfulness of his actions or conform his conduct to the law. Appellant did not request an additional evaluation by an examiner of his choice, as permitted by Wyo. Stat. Ann. § 7-11-304(g).
[¶10] The matter proceeded to a bench trial and, despite Dr. Yufik's evaluation, Appellant did not change his plea and continued to assert his NGMI defense. During its case-in-chief, the prosecution presented testimony from eyewitnesses to the events. After the State rested, the defense presented testimony from Dr. Yufik and Appellant. After hearing all of the evidence, the court found Appellant guilty on all eight counts and rejected the NGMI defense, finding that Appellant "clearly appreciated the wrongfulness of his conduct" and "could conform his conduct to the requirements of law when he chooses to do so." The parties stipulated that Appellant is a habitual criminal under Wyo. Stat Ann. § 6-10-201. For the aggravated assault convictions, the court imposed three consecutive sentences of 20 to 25, 15 to 20, and 15 to 20 years. The court ordered lesser sentences for the remaining convictions to be served concurrently to those sentences. This appeal followed.
STANDARD OF REVIEW
[¶11] Appellant contends the district court erred in concluding he failed to prove he was not guilty by reason of mental illness. The parties disagree as to the appropriate standard of review. The State notes that we have not articulated a standard for reviewing *175 a decision as to whether the defendant was mentally responsible for his crimes.
[¶12] Normally in criminal cases, the question is whether the State presented sufficient evidence to convict the defendant. Accordingly, this Court must determine whether a "rational trier of fact could find the essential elements of the crime were proven beyond a reasonable doubt." May v. State , 2003 WY 14, ¶ 11, 62 P.3d 574, 578 (Wyo. 2003) (citation omitted). This Court does not consider "conflicting evidence presented by the unsuccessful party, and afford[s] every favorable inference which may be reasonably and fairly drawn from the successful party's evidence." Id. (citation omitted). In this case, however, Appellant does not contend the district court erred in finding there was sufficient evidence to convict him.
[¶13] Instead, Appellant contends the district court erred in rejecting his NGMI defense. When a defendant pleads not guilty by reason of mental insanity, the prosecution bears the burden of proving beyond a reasonable doubt all the elements of the offense charged, while the defendant has the "burden of going forward and proving by the greater weight of evidence that, as a result of mental illness or deficiency, he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." Wyo. Stat. Ann. § 7-11-305(b) (LexisNexis 2017). The defendant must disprove the legal presumption that he is "mentally responsible." Id.
[¶14] We agree with the State that this is a matter of first impression. In matters of first impression, we look to other jurisdictions for guidance. Schnitker v. State , 2017 WY 96, ¶ 10, 401 P.3d 39, 42 (Wyo. 2017). In State v. Flake , 88 S.W.3d 540, 552-53 (Tenn. 2002), the Tennessee Supreme Court collected cases setting forth various standards for reviewing claims of mental illness:
Our research indicates that appellate courts in other jurisdictions apply a deferential standard when reviewing a jury's rejection of the insanity defense, but appellate courts do not use uniform language when describing the applicable standard. The "reasonableness" standard adopted by the Fifth Circuit Court of Appeals in [United States v. ] Barton [992 F.2d 66 (5th Cir. 1993) ] has been adopted by some state courts considering the issue. See Fuss v. State, 271 Ga. 319, 519 S.E.2d 446, 448 (1999) ("whether after reviewing the evidence in the light most favorable to the state, a rational trier of fact could have found that the defendant failed to prove by a preponderance of the evidence that he was insane at the time of the crime."); State v. Silman, 663 So.2d 27, 32 (La. 1995) ; State v. Prince, 688 So.2d 643, 649 (La.Ct.App.1997) ("whether, viewing the evidence in the light most favorable to the state, any rational juror could have found that the defendant had not proven by a preponderance of the evidence that he was insane at the time of the offense."). Other state appellate courts preclude disturbing the fact-finder's resolution of the sanity issue "unless the verdict is contrary to the manifest weight of the evidence," or "the proof of insanity is overwhelming" or the verdict is "contrary to the great preponderance of the evidence," or the "judgment is so against the great weight and preponderance of the evidence so as to be manifestly unjust." Arkansas appellate courts review a jury verdict rejecting the insanity defense to determine "whether there was any substantial evidence to support the verdict." The Indiana Supreme Court has stated that a defendant whose insanity defense fails at trial "has a monumental burden if he seeks to upset the finding of the fact trier on appeal, for he is appealing from a negative finding, and the issue is not whether or not the finding was sustained by the evidence but rather whether it was contrary to all the evidence and hence contrary to law. " Turner v. State, 428 N.E.2d 1244, 1246 (Ind. 1981) (emphasis in original). Indiana appellate courts, therefore, reverse a fact finder's rejection of the insanity defense "only when the evidence is without conflict and leads to but one conclusion which the trier of fact did not reach."
This lack of uniformity on the proper standard of appellate review is also reflected in federal appellate court decisions *176 ... Some federal circuit courts apply a "clearly erroneous" standard of review, reversing a jury's finding on the insanity issue only if it is clearly erroneous. See United States v. Hiebert, 30 F.3d 1005, 1007 (8th Cir. 1994) ; United States v. Reed, 997 F.2d 332, 334 (7th Cir. 1993) ; United States v. Freeman, 804 F.2d 1574, 1577 (11th Cir. 1986). Other federal courts, including the Fifth Circuit, apply the "reasonableness" standard, derived from the Jackson v. Virginia, sufficiency standard. Barton, 992 F.2d at 69 ; United States v. Martin, 56 M.J. 97, 106 (C.A.A.F. 2001). This "reasonableness" standard requires an appellate court to view the evidence in the light most favorable to the prosecution and reverse a jury verdict rejecting the insanity defense "only if no reasonable trier of fact could have failed to find that the defendant's criminal insanity at the time of the offense was established by clear and convincing evidence." Barton, 992 F.2d at 69 ; Martin, 56 M.J. at 107.
(Footnotes omitted.) After considering the various standards, the Court determined that appellate courts in Tennessee should apply what it described as the "reasonableness" standard when reviewing a jury's rejection of the insanity defense. Id. , 88 S.W.3d at 554. The Court stated that, under this standard, a decision rejecting the insanity defense would be reversed only if "considering the evidence in the light most favorable to the prosecution, no reasonable trier of fact could have failed to find that the defendant's insanity at the time of the offense was established by clear and convincing evidence." Id. In adopting this standard, the Court relied, in part, on the fact that the pertinent statute placed the burden of establishing the insanity defense squarely on the defendant. Id.
[¶15] We agree with what appears to be the majority of jurisdictions applying the "reasonableness" standard in reviewing NGMI claims. As in those jurisdictions, our statutory scheme places the burden on the defendant to prove that he was not mentally responsible for his crimes. In light of the language of Wyo. Stat. Ann. § 7-11-305(b), which requires the defendant to carry his burden "by the greater weight of evidence," we conclude the applicable standard of review is whether, after reviewing the evidence in the light most favorable to the State, a rational trier of fact could have found that the defendant failed to prove the defense by a preponderance of the evidence. We note that other states requiring the defendant to establish the defense by a preponderance of the evidence have adopted a similar standard of review. See , e.g. , Fuss v. State , 271 Ga. 319, 320, 519 S.E.2d 446, 448 (Ga. 1999) ; State v. Lively , 130 Wash. 2d 1, 17, 921 P.2d 1035, 1043 (Wash. 1996) (applying the standard to all affirmative defenses); State v. Roy , 395 So.2d 664 (La. 1981).[1]
DISCUSSION
[¶16] As noted above, Appellant contends the district court erred in rejecting his NGMI defense. The requirements of that defense are set forth at Wyo. Stat. Ann. §§ 7-11-304 and 7-11-305 (LexisNexis 2017). Section 7-11-304 provides:
(a) A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6-1-202(b).
(b) As used in this section, the terms "mental illness or deficiency" do not include an abnormality manifested only by *177 repeated criminal or otherwise antisocial conduct.
Section 7-11-305 provides, in part:
...
(b) The prosecution shall prove beyond a reasonable doubt all the elements of the offense charged. Every defendant is presumed to be mentally responsible. The defendant shall have the burden of going forward and proving by the greater weight of evidence that, as a result of mental illness or deficiency, he lacked capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law.
(c) Only the designated examiners who examined the defendant pursuant to W.S. 7-11-303 or 7-11-304 are competent witnesses to testify as to the defendant's mental responsibility.
(d) In addition, the state and the defendant may summon other expert witnesses who did not examine the defendant. Such experts are not competent to testify as to the mental responsibility of the defendant; however, they may testify as to the validity of the procedures followed and the general scientific propositions stated by other witnesses.
(e) The designated examiner who examined the defendant may testify as to and explain the nature of his examinations, his diagnosis of mental illness or deficiency of the defendant, and his opinion as to the defendant's ability to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. The designated examiner may be cross-examined as to his competence and the credibility of his diagnosis and his opinion.
Accordingly, in order to establish the NGMI defense under Wyo. Stat. Ann. §§ 7-11-304 and 7-11-305, Appellant had the burden of proving that (1) as a result of mental illness or deficiency, (2) he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law.
[¶17] With respect to the first prong of the NGMI defense, the parties dispute whether Appellant suffered from a mental illness or deficiency. The district court, however, did not address this issue and, instead, focused on the issue of whether Appellant lacked substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the law. We will also limit our review to this issue.
[¶18] Appellant's claim that he was unable to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of the law was directly contradicted by Dr. Yufik's expert opinion. Dr. Yufik's report from his examination of Appellant was introduced into evidence at trial. In the report, Dr. Yufik expressly stated it was his opinion that "at the time of the alleged offenses, [Appellant] did not lack substantial capacity to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of the law." (Emphasis in original). During his testimony, Dr. Yufik confirmed his opinion that Appellant was mentally responsible for his actions. He stated that Appellant's mental condition "doesn't impair his understanding of societal norm." He further testified that "[Appellant] still understands that these actions are illegal and society may also consider them to be immoral." Notably, Dr. Yufik was the only witness who was competent to express an opinion on Appellant's mental responsibility under Wyo. Stat. Ann. § 7-11-305(c). Appellant did not request a second evaluation by an examiner of his choice, pursuant to Wyo. Stat. Ann. § 7-11-304(g), and he did not exercise his right, under Wyo. Stat. Ann. § 7-11-305(d), to call an expert witness to challenge the procedures used or scientific propositions expressed by Dr. Yufik.
[¶19] In addition to the testimony of Dr. Yufik, other evidence introduced at trial indicates that Appellant realized his actions were not in conformity with the law. The evidence suggests Appellant knew he had violated his parole and knew the police and his parole agent were looking for him. Appellant repeatedly ran from the police in an attempt to evade apprehension. Appellant also lied to his parole agent in an effort to avoid the consequences of his actions, again indicating he was aware of the wrongfulness of his conduct.
*178 Viewing the evidence in the light most favorable to the State, including the circumstantial evidence indicating that Appellant was aware of the wrongfulness of his conduct and Dr. Yufik's unequivocal opinion that Appellant was, in fact, able to appreciate the wrongfulness of his conduct and conform his conduct to the requirements of the law, we conclude a rational trier of fact could have found that Appellant failed to prove the NGMI defense by a preponderance of the evidence.
[¶20] Affirmed.

We note the fact that this case comes to us after a bench trial, with the judge sitting as factfinder, does not impact our determination as to the appropriate standard of review. Trumbull v. State , 2009 WY 103, ¶ 9, 214 P.3d 978, 980 (Wyo. 2009) ("The function of the finder of fact in cases tried to a court is identical to that in cases tried to juries, and the same rules are applicable with respect to the standards and principles applied in appellate review."); Faubion v. State , 2010 WY 79, ¶ 12, 233 P.3d 926, 929 (Wyo. 2010).