# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 48

**APRIL TERM, A.D. 2024**

**May 2, 2024**

SOLOMON PRESTON BOLEN,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-23-0031, S-23-0154

*Appeal from the District Court of Converse County*
*The Honorable F. Scott Peasley, Judge*

*Representing Appellant:*
> *Office of State Public Defender: Diane M. Lozano, State Public Defender; Kirk A. Morgan, Chief Appellate Counsel; Jeremy Meerkreebs, Assistant Appellate Counsel. Argument by Mr. Meerkreebs.*

*Representing Appellee:*
> *Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General. Argument by Ms. Jones.*

*FOX, C.J., delivers the opinion of the Court; FENN, J., files a specially concurring opinion.*

*Before FOX, C.J., and KAUTZ\*, BOOMGAARDEN, GRAY, and FENN, JJ.*

*\* Justice Kautz retired from judicial office effective March 26, 2024, and, pursuant to Article 5, § 5 of the Wyoming Constitution and Wyo. Stat. Ann. § 5-1-106(f) (2023), he was reassigned to act on this matter on March 27, 2024.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FOX, Chief Justice.**

[¶1]    Solomon Bolen was convicted of numerous offenses including attempted second-degree murder and aggravated assault and battery. On appeal, he claims the district court violated his due process rights when it did not instruct the jury on his not guilty by reason of mental illness or deficiency (NGMI) plea, and his attorneys were ineffective when they did not seek those instructions. He further contends his convictions for attempted second-degree murder and aggravated assault and battery violated his right against double jeopardy. We affirm.

## *ISSUES*

[¶2]    Mr. Bolen raises three issues, which we rephrase as follows:

1. Did the district court violate Mr. Bolen's right to due process when it did not instruct the jury on his NGMI defense?

2. Did Mr. Bolen receive ineffective assistance of counsel when his attorneys did not renew their request for NGMI instructions or a special verdict form?

3. Do Mr. Bolen's convictions for attempted second-degree murder and aggravated assault and battery violate his right against double jeopardy?

## *FACTS*

[¶3]    On October 5, 2021, Mr. Bolen set out from Sterling, Colorado with his girlfriend and their young son. They were headed to the home of Meredith and Lewis Stock in Douglas, Wyoming. Mr. Bolen had lived with the Stocks in 2016 and used to be in a relationship with Lewis Stock's daughter, Laura Stock.

[¶4]    The three stopped in Glendo, Wyoming to rest and arrived at the Stock home on the morning of October 6. Throughout the trip, Mr. Bolen had used methamphetamine, and when they arrived, he was upset and behaving in a hyperactive and erratic manner. He told Meredith Stock that Laura Stock was harassing him, and, although Ms. Stock could tell Mr. Bolen was upset, she did not understand why because his conversation was "all over the place."

1

[¶5]    After his conversation with Ms. Stock, Mr. Bolen called 911, and Deputies Mark Dexter and Russell Smith of the Converse County Sheriff's Department responded. Deputy Smith, who was the first to arrive, found Mr. Bolen upset because he thought his girlfriend and son were missing, though he then told Deputy Smith that he had found them. Mr. Bolen also wanted to report sex trafficking and prostitution he believed to be occurring in the Sterling area. Deputy Smith found Mr. Bolen's story disjointed and erratic, but he told Mr. Bolen he would report his concerns to Colorado authorities.

[¶6]    Deputy Dexter also spoke with Mr. Bolen, and Mr. Bolen repeated his report of prostitution in Colorado. He also told Deputy Dexter that people were breaking into his hotel room in Colorado and taking things, and he showed him a cell phone photo of a broken door jamb that Deputy Dexter felt was consistent with his claim. Deputy Dexter found Mr. Bolen to be agitated and speaking fast with his conversation all over the place. He also thought Mr. Bolen seemed paranoid and was likely under the influence of a controlled substance.

[¶7]    When the deputies again informed Mr. Bolen that all they could do was forward his report to the appropriate Colorado authorities, he became agitated and asked them to leave. After the deputies left, Mr. Bolen took an older brown truck belonging to Mr. Stock and drove to the Stocks' rental property. He entered the residence and removed firearms and a pair of binoculars belonging to the Stocks' renter, Tracy Sanborn. From there, he drove to an adjacent property owned by Frank and Diane Prado.

[¶8]    The Prados allow friends to hunt on their ranch, and on that morning there were three hunters from California on the property. Brothers Richard and John Cleary and their friend George Heger had stayed in a trailer on the property and were packing up their camp in preparation for their return home when Mr. Bolen approached the men on foot.

[¶9]    After introducing himself and engaging in some casual conversation, Mr. Bolen asked the hunters who was inside the trailer, if someone was under the trailer, and if he could look inside the trailer. The men found these questions strange, and they told Mr. Bolen he was trespassing and needed to leave. Mr. Bolen stormed off and stated: "I don't give a f*ck," and "It's going to be getting federal here in about 10 minutes."

[¶10]   The men heard a vehicle start up and saw Mr. Bolen in a brown truck speeding down the Prados' driveway toward the main residence. They decided to follow him to make sure he was not doing anything wrong. John Cleary was driving, George Heger was in the front passenger seat, and Richard Cleary was in the back seat.

[¶11]   When the hunters arrived at the Prados' residence, they saw the brown truck parked in front of the house and the front door open about a foot. They parked adjacent to the front door, and almost immediately, Mr. Bolen came out the door, aiming one of Frank Prado's rifles at them. They attempted to leave, but as they drove around the circular driveway, Mr. Bolen fired at them. The bullet entered the front passenger door of the truck and passed through George Heger's lower left leg, shattering his tibia and fibula and causing extensive soft tissue, arterial, and nerve damage. The bullet then passed through both of John Cleary's lower legs before becoming embedded in the driver's side door. Like Mr. Heger, John Cleary sustained serious injuries to his lower legs, including a shattered tibia and broken fibula on his right leg.

[¶12]   John Cleary was able to drive a little further down the driveway, and the men took cover behind some hay bales. Mr. Bolen then left the Prado residence, drove across the Prado hay field, and returned to the Stock residence. When he arrived at the Stock residence, Mr. Bolen told his girlfriend: "I just shot someone. I don't care if they bleed out." He also told Meredith Stock he shot someone. He stayed at the Stock residence for about ten minutes before leaving in a different green truck that belonged to Mr. Stock.

[¶13]   George Heger managed to call 911 and reported two people had been shot by a "crazy black male" who had fled and was heading east. Responding deputies encountered Mr. Bolen as he was driving the green truck away from the Stocks' property. After briefly attempting to elude the deputies, Mr. Bolen was arrested. While searching Mr. Bolen incident to his arrest, deputies found a yellow straw in his pants pocket that contained the residue of a substance later confirmed to be methamphetamine.

[¶14]   Mr. Bolen was charged with 16 counts: three counts of attempted second-degree murder; three counts of aggravated assault and battery;[1] two counts of aggravated burglary (of the Sanborn and Prado residences); one count of aggravated robbery (of the Prado residence); one count of property destruction (damage to personal property of Sanborn); two counts of property destruction and defacement (damage to Stock vehicle and Prado hay field); one count of fleeing or attempting to elude police officers; one misdemeanor

---

[1] One of these counts (Count VI) was subsequently amended to "attempted aggravated assault and battery" to reflect that the victim in that count, Richard Cleary, was not actually injured. As explained more fully in our discussion of the double jeopardy issue, the crime of aggravated assault can be committed either by causing or attempting to cause serious bodily injury to another. Wyo. Stat. Ann. § 6-2-502(a)(i). Because the statute has a built-in attempt provision, the general attempt statute, Wyo. Stat. Ann. § 6-1-301, does not apply, and the crime of attempted aggravated assault and battery technically does not exist. Rather, an attempt to cause serious bodily injury constitutes aggravated assault and battery. Mr. Bolen did not argue this crime was improperly captioned or that it is incorrect for his Judgment and Sentence to reflect a conviction for "attempted aggravated assault and battery."

count for possession of methamphetamine; one count of unauthorized use of a vehicle; and one count of driving while under the influence of a controlled substance.[2]

[¶15] Shortly after Mr. Bolen's arraignment, defense counsel filed a motion for a competency evaluation pursuant to Wyo. Stat. Ann. § 7-11-303 (2023). Dr. Renee Wilkinson from the Wyoming State Hospital examined Mr. Bolen and recommended he be found competent to proceed. The district court held a hearing on the evaluation and found Mr. Bolen mentally fit to proceed.

[¶16] During that same hearing, Mr. Bolen indicated, based on findings in the competency evaluation, that he would like to change his plea from not guilty to concurrent pleas of not guilty and NGMI. The district court entered the pleas and ordered an NGMI evaluation pursuant to Wyo. Stat. Ann. § 7-11-304 (2023).

[¶17] After completing an NGMI evaluation, Dr. Wilkinson opined Mr. Bolen did not meet the statutory criteria for an NGMI defense. Dr. Wilkinson noted there was "significant evidence" Mr. Bolen was under the influence of methamphetamine and alcohol at the time of the crimes, and although he had an "altered state of mind" and was psychotic at that time, his condition was caused by self-induced intoxication, which is specifically excluded from the statutory definition of mental illness or deficiency.

[¶18] The district court held another hearing after receiving the NGMI evaluation, which Mr. Bolen refused to attend. Mr. Bolen's attorneys indicated they did not intend to request a second evaluation, and the court directed them to talk to Mr. Bolen about whether he wanted to change his plea in light of the report.

[¶19] Approximately two months before trial, the parties submitted stipulated jury instructions, which included instructions relating to an NGMI defense. At the pretrial conference about a month before trial, the district court asked if there was still an NGMI defense in the case. Defense counsel indicated there was, and that the defense intended to call Dr. Wilkinson to testify.

[¶20] Mr. Bolen put on a defense case and called Dr. Wilkinson as a witness. She testified to symptoms Mr. Bolen was experiencing on October 6, 2021, including delusions and paranoia, but she opined his behaviors were consistent with methamphetamine use, and he did not meet the statutory requirements to be found NGMI.

---

[2] This count was dismissed before trial.

4

[¶21] During the reported jury instruction conference, the parties did not discuss the NGMI instructions, no NGMI instructions were given, and the verdict form did not offer the jury the option of considering Mr. Bolen's NGMI defense. The jury was given an instruction regarding the defense of self-induced intoxication.

[¶22] At the end of a four-day jury trial, the jury convicted Mr. Bolen of 13 of the 15 counts.[3] He was sentenced to a total of 30 to 40 years in prison and timely appealed. While his appeal was pending, Mr. Bolen filed a motion for a new trial pursuant to W.R.A.P. 21. He asserted his trial attorneys were ineffective for not pursuing NGMI instructions and a special verdict form when his NGMI plea had not been withdrawn and he had not consented to its withdrawal or abandonment. He asserted he had been prejudiced by this conduct because he had put on evidence to support an NGMI defense, but the jury was not permitted to consider it and decide whether his conduct was the result of a mental illness or self-induced intoxication.

[¶23] Following an evidentiary hearing, the district court denied Mr. Bolen's W.R.A.P. 21 motion. It found trial counsel made a strategic decision not to pursue the NGMI defense and to focus instead on the self-induced intoxication defense, and this decision did not constitute ineffective assistance. Mr. Bolen appealed the denial of his motion for a new trial, and we consolidated his appeals.

## *DISCUSSION*

## I.     *The district court did not violate Mr. Bolen's right to due process when it did not instruct the jury on his NGMI defense.*

[¶24] "A defendant has a due process right to a theory of defense instruction," and our review of a court's rejection of or failure to give such an instruction is de novo. *Kessel v. State*, 2023 WY 120, ¶ 13, 539 P.3d 406, 409 (Wyo. 2023) (quoting *Harnetty v. State*, 2019 WY 21, ¶ 27, 435 P.3d 368, 374 (Wyo. 2019)). "[A]n erroneous refusal of a theory of defense instruction is 'reversible error per se.'" *Kessel*, 2023 WY 120, ¶ 13, 539 P.3d at 409 (quoting *Black v. State*, 2020 WY 65, ¶ 22, 464 P.3d 574, 579 (Wyo. 2020)). However, a defense instruction not supported by the evidence may properly be refused. *Garza v. State*, 2020 WY 32, ¶ 22, 458 P.3d 1239, 1244-45 (Wyo. 2020) (citing *James v. State*, 2015 WY 83, ¶ 18, 357 P.3d 101, 106 (Wyo. 2015)).

> The quantum of evidence required to submit a theory of defense to a jury has been described as "any evidence," "some evidence," "slight evidence," and "more than a scintilla." These phrases are not useful because the ultimate test is

---

[3] Mr. Bolen was found not guilty of two property destruction charges.

5

> whether the evidence (regardless of amount) creates a fact issue requiring submission to the jury.

*Howitt v. State*, 2022 WY 152, ¶ 27, 521 P.3d 314, 322 (Wyo. 2022) (quoting *Black*, 2020 WY 65, ¶ 24, 464 P.3d at 580).

[¶25]  Mr. Bolen contends he presented sufficient evidence to warrant an instruction on his NGMI defense and that the issue of whether his "distorted perception of reality" was primarily attributable to self-induced intoxication or mental illness was a question of fact the jury should have resolved. We disagree.

[¶26]  "An NGMI defense is governed by statute, and the law presumes every defendant to be 'mentally responsible.'" *Rodriguez v. State*, 2022 WY 109, ¶ 38, 516 P.3d 850, 857 (Wyo. 2022) (citing Wyo. Stat. Ann. § 7-11-305(b)). A defendant asserting the defense bears the burden of disproving the presumption that he was mentally responsible. *Rodriguez*, 2022 WY 109, ¶ 38, 516 P.3d at 857 (citing *Gabbert v. State*, 2018 WY 69, ¶ 13, 420 P.3d 172, 175 (Wyo. 2018)); *see also* Wyo. Stat. Ann. § 7-11-305(b) (2023)).

> The NGMI defense is statutorily defined as follows:
>
>> A person is not responsible for criminal conduct if at the time of the criminal conduct, as a result of mental illness or deficiency, he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. As used in this section, the terms mental illness or deficiency mean only those severely abnormal mental conditions that grossly and demonstrably impair a person's perception or understanding of reality and that are not attributable primarily to self-induced intoxication as defined by W.S. 6-1-202(b).

Wyo. Stat. Ann. § 7-11-304(a).

[¶27]  Thus, to establish an NGMI defense, Mr. Bolen had to prove that at the time of his crimes, he was 1) suffering from a "severely abnormal mental condition," and 2) he was unable to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. Importantly, only court-designated examiners who examined the defendant "are competent witnesses to testify as to the defendant's mental responsibility."[4] Wyo. Stat. Ann. § 7-11-305(c).

---

[4] A designated examiner is "a licensed psychiatrist, or other physician with forensic training or a licensed psychologist with forensic training[.]" Wyo. Stat. Ann. § 7-11-301(a)(i).

[¶28] Dr. Renee Wilkinson was the only court-designated examiner of Mr. Bolen. She testified that Mr. Bolen suffered from paranoia and delusions at the time of his crimes. She did not, however, testify that Mr. Bolen suffered from a severely abnormal mental condition or that he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law. In fact, she testified to the contrary that Mr. Bolen did not suffer a severely abnormal mental condition at the time of his crime and was not statutorily eligible for an NGMI defense because his behaviors, delusions, and paranoia were due to methamphetamine intoxication.

[¶29] Despite Dr. Wilkinson's testimony, Mr. Bolen contends there was evidence from which the jury could have found that at the time of his crimes he was suffering from a severely abnormal mental condition and was unable to appreciate the wrongfulness of his conduct or conform his conduct to the requirements of law. He points to evidence that one of the victims described him as erratic, confused, and delusional and as "a crazy black dude talking out of his mind." He also cites a law enforcement's description of him as paranoid and delusional, and his own testimony that he could not remember the events of October 6, 2021.

[¶30] This evidence falls short because Wyo. Stat. Ann. § 7-11-305 is clear that "[o]nly the designated examiners who examined the defendant . . . are competent witnesses to testify as to the defendant's mental responsibility." By the plain terms of the statute, the observations or testimony of a lay witness is not competent evidence of a defendant's mental responsibility. *See Alvarado v. State*, 2024 WY 9, ¶ 4, 541 P.3d 1097, 1099 (Wyo. 2024) ("When interpreting statutes, we seek the legislature's intent as reflected in the plain and ordinary meaning of the words used in the statute[.]").[5]

[¶31] When a defendant fails to present evidence to establish the statutorily required mental illness or deficiency, "a district court should not . . . submit the issue of mental illness or deficiency to the jury simply on the basis of a plea of not guilty by reason of mental illness or deficiency." *Kind v. State*, 595 P.2d 960, 962 (Wyo. 1979); *see also* 23A C.J.S. *Criminal Procedure and Rights of Accused* § 1786 (March 2024 Update) ("[W]hether defendant has presented some evidence, so as to reach the jury on the insanity defense, is for the court, which is permitted to withhold the defense from consideration of the jury when there is no evidence presented or where there is insufficient evidence to present a jury question on the defense . . . ."). Because Mr. Bolen did not present competent

---

[5] Mr. Bolen contends that the circumstantial evidence of his paranoia, delusions, and erratic behavior was competent evidence of his mental responsibility and that Wyo. Stat. Ann. § 7-11-305(c) precludes only experts not designated by the court from testifying to a defendant's mental responsibility. We can think of no reason the legislature would deem an outside expert incompetent to testify to a defendant's mental responsibility but allow lay observations or testimony to establish the critical components of an NGMI defense. We therefore reject this interpretation of the statute. *See Hopeful v. Etchepare, LLC*, 2023 WY 33A, ¶ 43, 528 P.3d 414, 427 (Wyo. 2023) ("We will not interpret a statute in a way that renders any portion meaningless or in a manner producing absurd results.").

evidence satisfying the statutory requirements of an NGMI defense, he was not entitled to an instruction on the defense.

## II.     Mr. Bolen was not deprived of the effective assistance of his counsel when his attorneys did not renew their request for NGMI instructions or a special verdict form.

[¶32]   "Ineffective assistance of counsel claims 'involve mixed questions of law and fact.'" *Jendresen v. State*, 2021 WY 82, ¶ 36, 491 P.3d 273, 284 (Wyo. 2021) (quoting *Sides v. State*, 2021 WY 42, ¶ 34, 483 P.3d 128, 137 (Wyo. 2021)). "We review the district court's findings of fact for clear error and its conclusions of law de novo." *Id*.

[¶33]   A criminal defendant has the right to effective assistance of counsel. *Buckingham v. State*, 2022 WY 99, ¶ 25, 515 P.3d 615, 619 (Wyo. 2022) (citing U.S. Const. amend. VI; Wyo. Const., art. 1, § 10; *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063, 80 L. Ed.2d 674 (1984)). To succeed on a claim of ineffectiveness, a defendant "must show both that counsel's performance was deficient, and he was prejudiced as a result." *Buckingham*, 2022 WY 99, ¶ 25, 515 P.3d at 619 (quoting *Steplock v. State*, 2022 WY 12, ¶ 20, 502 P.3d 930, 936 (Wyo. 2022)). Counsel acts deficiently when he "fails to render such assistance as would have been offered by a reasonably competent attorney." *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 936-37 (quoting *Neidlinger v. State*, 2021 WY 39, ¶ 53, 482 P.3d 337, 351-52 (Wyo. 2021)). "Prejudice occurs when there is 'a reasonable probability that, absent counsel's deficient assistance, the outcome of appellant's trial would have been different.'" *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 937 (quoting *Neidlinger*, 2021 WY 39, ¶ 53, 482 P.3d at 351-52). We may, and often do, dispose of an ineffective assistance claim solely on the prejudice prong. *See Steplock*, 2022 WY 12, ¶ 22, 502 P.3d at 937 (disposing of ineffectiveness claim on the ground of lack of prejudice is often the preferred course.) (quoting *Leners v. State*, 2021 WY 67, ¶ 21, 486 P.3d 1013, 1018 (Wyo. 2021), *cert. denied*, —— U.S. ——, 142 S.Ct. 410, 211 L. Ed.2d 220 (2021)); *see also Tarpey v. State*, 2023 WY 14, ¶ 55, 523 P.3d 916, 932 (Wyo. 2023); *Buckingham*, 2022 WY 99, ¶ 27, 515 P.3d at 619.

[¶34]   Mr. Bolen claims that because the evidence warranted instructions on his NGMI defense and he had not consented to abandonment of the defense, his attorneys were ineffective in failing to renew their request for the instructions. We reject this claim under the prejudice prong.

[¶35]  As discussed above, Mr. Bolen did not present evidence necessary to support an NGMI defense, and he therefore was not entitled to have the jury instructed on the defense. *Kind*, 595 P.2d at 962 ("In the absence of evidence submitted by a defendant in a criminal proceeding tending to establish mental illness or deficiency, a district court should not, despite the language of the statute, submit the issue of mental illness or deficiency to the jury simply on the basis of a plea of not guilty by reason of mental illness or deficiency."). Because the instructions would not have been proper even had Mr. Bolen's attorneys renewed their request for them, Mr. Bolen has not shown there is a reasonable probability the outcome of the trial would have been more favorable to him had his counsel renewed their request. In the absence of prejudice, his claim fails.

### III.    *Mr. Bolen's convictions for attempted second-degree murder and aggravated assault and battery do not violate double jeopardy.*

[¶36]  Mr. Bolen claims his convictions for the trio of attempted second-degree murder charges and aggravated assault and battery charges "constitute double punishment" in violation of double jeopardy protections because all six counts stemmed from the same physical act: "*one single shot* from *one single rifle.*" Because he was convicted of attempted second-degree murder for each victim, he contends the corresponding aggravated assault and battery convictions cannot be sustained, and those sentences should be vacated.

[¶37]  Mr. Bolen raises his claim under the Fifth Amendment to the United States Constitution and Article 1, § 11 of the Wyoming Constitution. We have said:

> The Fifth Amendment to the United States Constitution, which applies to the states through the Fourteenth Amendment, prohibits multiple prosecutions and punishments for the same offense. U.S. Const. amend V ("nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb."); *Cercy v. State*, 2019 WY 131, ¶ 11, 455 P.3d 678, 682 (Wyo. 2019) (citations omitted). Article 1, Section 11 of the Wyoming Constitution also prohibits multiple prosecutions and punishments for the same offense. Wyo. Const. art 1, § 11 ("nor shall any person be twice put in jeopardy for the same offense."). We give the two constitutional provisions the same meaning, consider them "coextensive in application," and can look to federal court decisions regarding the Fifth Amendment's double jeopardy protections for persuasive authority. *Tucker v. State*, 2010 WY 162, ¶ 41, 245 P.3d 301, 311–12 (Wyo. 2010); *Vigil v. State*, 563 P.2d 1344, 1350 (Wyo. 1977). The double jeopardy clauses protect against: (1) second prosecutions for the same offense after an acquittal; (2)

second prosecutions for the same offense after a conviction; and (3) multiple punishments for the same offense. *Tucker*, 2010 WY 162, ¶ 41, 245 P.3d at 311-12; *Amrein v. State*, 836 P.2d 862, 864 (Wyo. 1992).

*Veatch v. State*, 2023 WY 79, ¶ 9, 533 P.3d 505, 508 (Wyo. 2023).

[¶38]   To determine if two offenses constitute the "same offense," we have adopted the same-elements test set forth in *Blockburger v. United States*, 284 U.S 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932), which asks "whether each offense charged contains an element not contained in the other." *Veatch*, 2023 WY 79, ¶ 12, 533 P.3d at 508-09. "If the elements are the same, they are the same offense, and the double jeopardy clause therefore protects against successive prosecution and multiple punishments arising from those offenses." *Id.*, 533 P.3d at 509 (citing *Blockburger*, 284 U.S. at 304, 52 S. Ct. at 182; *United States v. Dixon*, 509 U.S. 688, 696-98, 113 S. Ct. 2849, 2856, 125 L. Ed. 2d 556 (1993)). In applying this test,

> we look only to the language used by the legislature to describe the elements which must be proven to bring a particular defendant's specific conduct within the reach of the statute. We do not concern ourselves with how those elements are proven in that defendant's case—that is, we look to what the legislature says must be proven, not the facts or evidence used in a particular case to establish that ultimate fact.

*Winters v. State*, 2019 WY 76, ¶ 101, 446 P.3d 191, 221 (Wyo. 2019) (quoting *Jones v. State*, 2016 WY 110, ¶ 12, 384 P.3d 260, 264 (Wyo. 2016)). "[D]ouble jeopardy protections relate to 'offenses' as defined by the language used to set out the elements of a statutory crime, not as defined by a defendant's particular actions." *Jones*, 2016 WY 110, ¶ 13, 384 P.3d at 264 (citing *Sweets v. State*, 2013 WY 98, ¶ 47, 307 P.3d 860, 875 (Wyo. 2013)).

[¶39]   "The key inquiry is whether the legislative branch intended the defendant's conduct to result in separate offenses and separate punishments—and if the legislature did so intend, then there is no double jeopardy violation." *Winters*, 2019 WY 76, ¶ 101, 446 P.3d at 221 (quoting *Sweets*, 2013 WY 98, ¶ 21, 307 P.3d at 867). "Whether the separate provisions describe the 'same offense' is a question of legislative intent which this Court reviews de novo." *Jones*, 2016 WY 110, ¶ 10, 384 P.3d at 263 (citing *Sweets*, 2013 WY 98, ¶¶ 19, 21, 307 P.3d at 867) (italics removed).

[¶40]   Second-degree murder is defined by Wyo. Stat. Ann. § 6-2-104(a) (2023), which states in relevant part:

> [W]hoever purposely and maliciously, but without premeditation, kills any human being is guilty of murder in the second degree . . . .

[¶41] Because Mr. Bolen was charged with attempted second-degree murder, we must also look to the attempt statute, Wyo. Stat. Ann. § 6-1-301(a)(i) (2023), which provides in pertinent part:

> A person is guilty of an attempt to commit a crime if:
>
> > With the intent to commit the crime, he does any act which is a substantial step towards commission of the crime. A "substantial step" is conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]

[¶42] Interpreting these two statutes together, we have held that the crime of attempted second-degree murder "requires proof that a defendant intentionally did the act that constitutes a substantial step towards committing murder, and that he also harbored the intent that defines the underlying crime—that he acted purposely and maliciously." *Jones*, 2016 WY 110, ¶ 26, 384 P.3d at 266 (citing *Bloomfield v. State*, 2010 WY 97, ¶ 13, 234 P.3d 366, 372 (Wyo. 2010)). Maliciously as used in the second-degree murder statute "means that the act constituting the offense was done recklessly under circumstances manifesting an extreme indifference to the value of human life[.]" *Wilkerson v. State*, 2014 WY 136, ¶ 27, 336 P.3d 1188, 1200 (Wyo. 2014).

[¶43] The portion of the aggravated assault and battery statute under which Mr. Bolen was charged, Wyo. Stat. Ann. § 6-2-502(a)(i) (2023), states:

> A person is guilty of aggravated assault and battery if he engages in any of the following:
>
> > Causes or attempts to cause serious bodily injury to another intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]

[¶44] We have held that when a defendant is charged with aggravated assault and battery involving an attempted injury, the State must prove the defendant acted with the specific intent to cause serious bodily injury. *Schuerman v State*, 2022 WY 160, ¶ 11, 522 P.3d 145, 149 (Wyo. 2022).

[¶45]  The various elements of the crimes Mr. Bolen was convicted of are summarized in the chart below:

| Counts I, II, and III Attempted Second-Degree Murder | Counts IV and V Aggravated Assault and Battery | Count VI Aggravated Assault and Battery (Attempted Injury) |
|---|---|---|
| 1. Mr. Bolen "**intentionally performed an act** constituting a substantial step toward" killing a human being; and | 1. Mr. Bolen "**cause[d] serious bodily injury** to another"; and | 1. Mr. Bolen **acted with the specific intent to cause serious bodily injury**. |
| 2. **he acted "purposely," which means intentionally or deliberately**; and | 2. he acted "intentionally, knowingly[,] or recklessly under circumstances manifesting an extreme indifference to the value of human life." | |
| 3. he acted maliciously, which means he acted recklessly under circumstances manifesting an extreme indifference to the value of human life. | | |

[¶46]  A careful consideration of the statutory elements of each offense shows Mr. Bolen's convictions for his act against the three victims does not violate double jeopardy. First, the charges involving John Cleary and George Heger each required proof of an element the other did not. The attempted second-degree murder charges required the State to prove Mr. Bolen intentionally or deliberately **and** maliciously took a substantial step toward killing a human being. Wyo. Stat. Ann. §§ 6-1-301 and 6-2-104(a). Although the definition of maliciously is the same as that of recklessly found in the aggravated assault and battery statute, the aggravated assault and battery charge (with injury) did not require the State to prove the defendant acted intentionally or deliberately. Wyo. Stat. Ann. § 6-2-502(a)(i). The intent elements of attempted second-degree murder and aggravated assault and battery with an attempted injury are thus distinguishable.

[¶47]  Additionally, the aggravated assault charges involving the injured victims required the State to prove Mr. Bolen caused serious bodily injury. Wyo. Stat. Ann. § 6-2-502(a)(i). The attempted second-degree murder charges did not require proof of serious bodily injury.

Wyo. Stat. Ann. § 6-2-104(a). The attempted second-degree murder and aggravated assault and battery charges thus contained elements the other did not. *Veatch,* 2023 WY 79, ¶ 12, 533 P.3d at 509-10 (citing *Blockburger*, 284 U.S. at 304, 52 S. Ct. 182; *Dixon*, 509 U.S. at 696-98, 113 S. Ct. at 2856-57). Given the different elements, it is apparent the legislature intended for attempted second-degree murder and aggravated assault and battery (with injury) to constitute separate offenses. Mr. Bolen's convictions for all four charges related to John Cleary and George Heger therefore did not violate Mr. Bolen's right against double jeopardy.

[¶48] The charges involving Richard Cleary similarly have different elements under the *Blockburger* test. Again, the attempted second-degree murder charge required the State to prove Mr. Bolen intentionally or deliberately **and** maliciously took a substantial step toward killing a human being. Wyo. Stat. Ann. §§ 6-1-301, 6-2-104(a). Aggravated assault and battery with an attempted injury does not contain a "recklessly" element similar to the "maliciously" requirement of second-degree murder. Instead, the State had to prove Mr. Bolen acted with the specific intent to cause serious bodily injury. Wyo. Stat. Ann. § 6-2-502(a)(i); *Schuerman*, 2022 WY 160, ¶ 11, 522 P.3d at 149. In turn, the specific intent to cause serious bodily injury is not an element of attempted second-degree murder. Wyo. Stat. Ann. § 6-2-104(a). Both attempted second-degree murder and aggravated assault and battery with an attempted injury contain an element the other does not. *Veatch,* 2023 WY 79, ¶ 12, 533 P.3d at 508-09 (citing *Blockburger*, 284 U.S. at 304, 52 S. Ct. 182; *Dixon*, 509 U.S. at 696-98, 113 S. Ct. at 2856-57). The legislature thus intended for attempted second-degree murder and aggravated assault and battery with an attempted injury to constitute separate offenses. Accordingly, Mr. Bolen's convictions for both charges relating to Richard Cleary did not violate his right against double jeopardy.

## CONCLUSION

[¶49] Mr. Bolen did not present competent evidence showing he met the statutory criteria for an NGMI defense, and the district court thus did not violate his due process rights when it did not give NGMI instructions. Mr. Bolen's ineffective assistance claim fails because he did not establish that he was prejudiced by his attorney's performance. Last, because the crimes of attempted second-degree murder and aggravated assault and battery contain separate elements, Mr. Bolen's convictions did not violate double jeopardy.

[¶50] Affirmed.

13

**FENN, J., specially concurring.**

[¶51]   I agree with the results reached by the majority in this case.  I write separately to address some nuances with the ineffective assistance of counsel issue.  As the majority notes, our precedent states we may resolve these claims on the prejudice prong when appropriate. *Steplock*, 2022 WY 12, ¶ 22, 502 P.3d at 937.  However, doing so in this case inadequately reflects the unique nature of an NGMI defense and what occurred at the trial court level.  The district court resolved the ineffective assistance of counsel claim on the deficient performance prong, and I believe the deficient performance prong merits some discussion in this case.

[¶52]   As the majority points out, the NGMI defense is a statutory creation. *Rodriguez*, 2022 WY 109, ¶ 38, 516 P.3d at 857 (citing Wyo. Stat. Ann. § 7-11-305(b)).  Once a defendant enters an NGMI plea, the defendant's mental responsibility becomes an affirmative defense. *Brooks v. State*, 706 P.2d 664, 667 (Wyo. 1985).  A defendant bears the burden of disproving the presumption that he was mentally responsible. *Rodriguez*, ¶ 38, 519 P.3d at 857 (citing *Gabbert*, 2018 WY 69, ¶ 13, 420 P.3d at 175).  A defendant must prove by the greater weight of the evidence that "(1) as a result of mental illness or deficiency, (2) he lacked substantial capacity either to appreciate the wrongfulness of his conduct or to conform his conduct to the requirements of law." *Gabbert*, ¶ 16, 420 P.3d at 177; Wyo. Stat. Ann. § 7-11-305(b). Pursuant to Wyoming Statute § 7-11-305(c), only designated examiners who examined the defendant "are competent witnesses to testify as to the defendant's mental responsibility."

[¶53]   In this case, defense counsel thoroughly vetted the NGMI defense.  A "designated examiner," Dr. Wilkerson, examined Mr. Bolen and concluded he was mentally responsible for his crimes because voluntary intoxication is specifically excluded from the definition of mental illness or deficiency under Wyoming's NGMI statutes.  After the NGMI evaluation was completed, defense counsel learned there was no evidence to present in support of Mr. Bolen's NGMI defense.  Accordingly, defense counsel made a strategic decision to leave the NGMI plea in place while calling Dr. Wilkinson solely to elicit testimony about Mr. Bolen's delusions and paranoia to establish he was unable to form specific intent to commit attempted second-degree murder due to his self-induced intoxication.  At the W.R.A.P. 21 hearing, defense counsel testified:

> [APPELLATE COUNSEL:] In your opinion, do you feel like you missed the issue of these jury instructions or was this a strategic choice?
>
> A.  I would say it's a strategic choice to go solely after specific intent because we had no evidence to support an NGMI plea. And, quite the contrary, we had evidence directly contradicting an NGMI plea.

14

Q.  But separate from the strategic question of whether or not you would go for specific intent, which you've already testified that was your strategy, did you feel like strategically you could ignore the issue of NGMI because of the way the evidence shook out?

It's a little bit of a philosophical question.

A.  So I would agree with the assertion simply because there was absolutely no evidence to support it.  So, therefore, without any evidence to support it, it's kind of a frivolous issue.

Defense counsel further testified about this issue during cross-examination:

[STATE'S ATTORNEY:]  Do you feel like you and co-counsel ignored the issue of NGMI when preparing for Mr. Bolen's trial?

A.  No. It was thoroughly vetted.

Q.  Did you continue to consider the implications of an NGMI plea as it related to Mr. Bolen's case?

A.  We considered it until we got the report from Dr. Wilkinson that said he did not meet the criteria.

Q.  And I think you've already testified to it, but I'll ask again: Why was that that you felt like that was kind of a dispositive result?

A.  Under the statute of 7-11-304, it specifically states that only the doctors that examine the defendant can testify to an NGMI finding.  It specifically says you can't use lay people to do that.

We did the evaluation.  We had one doctor.  The doctor says he does not meet the criteria.  That's the only person that could testify to whether or not Mr. Bolen qualifies for an NGMI plea, and her finding was that he does not.

Q.  Do you recall Dr. Wilkinson testifying at Mr. Bolen's trial?

A.  Yes, I do.

15

Q. Was her testimony consistent with her report?

A. Yes, it was.

Q. Again, I may possibly be belaboring the issue, but [appellate counsel] asked you about renewing the request for these jury instructions or objecting to their omission. If you know, do you know why there was not a request for a renewal of these -- Strike that.

Do you know why you did not ask for these instructions to be included or object to their omission?

A. We had no evidence to support the NGMI, so there is no need for the instruction.

Q. In your opinion, would you have been entitled to those instructions had you asked for them at that time once the evidence had closed?

A. I don't believe so at all.

Defense counsel also testified he had a specific conversation with Mr. Bolen about trial strategy after the NGMI evaluation was completed:

[DEFENSE COUNSEL] Shortly after we got the 304 report, the NGMI report, I went to the jail and met with him. And we discussed it at length because what was revealed in that report was not what he and I had talked about prior, which specifically was the use of methamphetamines. So we had a long conversation regarding that and that that was no longer an option that we could pursue.

Q. However, you did persist with the NGMI plea; correct?

A. I'll say we let it die. I mean, we didn't pursue it. We didn't withdraw it.

Q. So why not withdraw it?

A. Well, so I'm not real certain on the proper procedure; but I knew if the NGMI was still on the table, there could be no

16

objection to Dr. Wilkinson testifying at trial. And I needed her -- I wanted her to testify to the findings in her report that related to the specific intent and that Mr. Bolen was suffering from paranoia and delusions. And I don't know for certain, but my theory was if the NGMI comes off the table, the county attorney's office could object to Wilkinson testifying because her point was to generate a report for NGMI.

Due to the lack of any evidence to support the NGMI defense, defense counsel made a strategic decision to leave the NGMI plea in place to preserve Dr. Wilkinson's testimony so it could be used to establish another defense that had a possibility of succeeding.

[¶54] Mr. Bolen failed to establish defense counsel ignored or inadequately investigated his NGMI defense. Mr. Bolen failed to show there was any evidence to support his NGMI defense that defense counsel overlooked. Mr. Bolen failed to demonstrate he was entitled to NGMI instructions that defense counsel neglected to request. Rather, there was simply no evidence that would have allowed Mr. Bolen to meet his burden of proving the statutory elements of the NGMI defense, and defense counsel strategically avoided withdrawal of the NGMI plea to obtain Dr. Wilkinson's testimony regarding Mr. Bolen's ability to form specific intent. In light of all the circumstances, defense counsel's actions fell within the "the wide range of professionally competent assistance." *Steplock*, 2022 WY 12, ¶ 20, 502 P.3d at 937 (quoting *Neidlinger*, 2021 WY 39, ¶ 53, 482 P.3d at 352).

[¶55] Although I agree with the majority that Mr. Bolen failed to establish he was prejudiced by defense counsel's performance, I would also conclude the district court correctly denied Mr. Bolen's W.R.A.P. 21 motion because Mr. Bolen failed to prove defense counsel's performance was deficient.